Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/26/2021 01:10 AM CST

State of Nebraska, appellee, v.
Timothy J. Britt, appellant.
___ N.W.2d ___

Filed September 3, 2021.    No. S-21-107.

1. **Postconviction: Constitutional Law: Appeal and Error.** In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief.

2. **Postconviction: Constitutional Law: Judgments.** Postconviction relief is available to a prisoner in custody under sentence who seeks to be released on the ground that there was a denial or infringement of his or her constitutional rights such that the judgment was void or voidable.

3. **Postconviction: Constitutional Law: Proof.** In a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable.

4. ____: ____: ____. A court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the U.S. or Nebraska Constitution.

5. **Postconviction: Proof.** If a postconviction motion alleges only conclusions of fact or law, or if the records and files in the case affirmatively show that the defendant is entitled to no relief, the court is not required to grant an evidentiary hearing.

6. **Postconviction: Appeal and Error.** When a district court denies postconviction relief without conducting an evidentiary hearing, an appellate court must determine whether the petitioner has alleged facts that would support the claim and, if so, whether the files and records affirmatively show that he or she is entitled to no relief.

7. **Effectiveness of Counsel: Proof: Words and Phrases: Appeal and Error.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. To show prejudice under the prejudice component of the *Strickland* test, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome.

8. **Effectiveness of Counsel: Proof.** The two prongs of the ineffective assistance of counsel test under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), may be addressed in either order.

9. **Self-Incrimination: Juries: Rules of Evidence.** Neb. Rev. Stat. § 27-513(2) (Reissue 2016) makes it clear that courts must avoid having witnesses claim privilege in the presence of the jury whenever practicable.

10. **Trial: Courts: Witnesses: Self-Incrimination.** Absent extraordinary circumstances, trial courts should exercise their discretion to forbid parties from calling witnesses who, when called, will only invoke a privilege.

11. **Witnesses: Impeachment: Prior Statements.** Prior inconsistent statements of a witness are admissible as impeachment evidence.

12. **Rules of Evidence: Prior Statements.** Prior inconsistent statements of a witness are not admissible as substantive evidence, unless they are otherwise admissible under the Nebraska Evidence Rules.

13. **Postconviction: Appeal and Error.** In an appeal from the denial of postconviction relief, an appellate court will not consider for the first time on appeal claims that were not raised in the verified motion.

14. **Appeal and Error.** An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.

15. **Records: Appeal and Error.** It is incumbent upon an appellant to supply a record which supports his or her appeal; absent such a record, as a general rule, the decision of the lower court as to those errors is to be affirmed.

16. **Postconviction: Courts.** The Nebraska Postconviction Act does not authorize the district court to grant postconviction relief without first

conducting an evidentiary hearing and making findings of fact and conclusions of law.

Appeal from the District Court for Douglas County: Kimberly Miller Pankonin, Judge. Affirmed.

Timothy J. Britt, pro se.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.

Miller-Lerman, Cassel, Stacy, Funke, and Papik, JJ.

Cassel, J.

# I. INTRODUCTION

Timothy J. Britt appeals from a district court's order—without an evidentiary hearing—overruling his motion for postconviction relief. Britt argues that he received ineffective assistance of counsel by his counsel's failure to call impeachment witnesses. However, one witness' testimony would have been inadmissible and there is not a reasonable probability that the other witnesses' testimony would have altered the outcome of the case. Therefore, Britt cannot prove that he suffered prejudice. We affirm.

# II. BACKGROUND

This is Britt's third appearance before this court addressing the criminal case below—a first direct appeal,[1] a second direct appeal,[2] and now this appeal regarding postconviction relief. The factual background relating to Britt's procedural history is set forth in more detail in our opinion involving Britt's second direct appeal.[3] Here, we provide only a brief summary.

---

[1] See *State v. Britt*, 293 Neb. 381, 881 N.W.2d 818 (2016).

[2] See *State v. Britt*, 305 Neb. 363, 940 N.W.2d 270 (2020).

[3] See *id.*

### 1. First Trial

The State charged Britt with three counts of first degree murder (Class IA felony), Neb. Rev. Stat. § 28-303(1) and (2) (Reissue 2008); three counts of use of a deadly weapon (gun) to commit a felony (Class IC felony), Neb. Rev. Stat. § 28-1205(1)(a) and (c) (Reissue 2016); and one count of possession of a deadly weapon (gun) by a prohibited person (Class ID felony), Neb. Rev. Stat. § 28-1206(1)(a) and (3)(b) (Reissue 2016). The State also charged that Britt met the definition of a "habitual criminal" as described in Neb. Rev. Stat. § 29-2221 (Reissue 2016).

Britt's charges resulted from the death of Miguel E. Avalos, Sr. (Avalos), and two of his sons, Jose Avalos and Miguel E. Avalos, Jr., in their Omaha, Nebraska, home during an attempted nighttime robbery. Each of them was shot multiple times and died from .40- and .22-caliber gunshot wounds. A .40-caliber gun was recovered at the scene.

The State contended that Anthony Davis and Britt were coconspirators who killed the three victims during Davis' and Britt's attempt to rob Avalos' home. A jury found Britt guilty on all counts.

Britt appealed. We ordered a new trial after we determined that the district court had reversibly erred when it admitted Davis' hearsay statements implicating Britt in the murders.[4]

### 2. Second Trial

The State retried Britt on the same charges, presenting essentially the same arguments, witnesses, and forensic evidence. While many witnesses identified Britt as participating in the robbery, an important witness was Tiaotta Clairday—Davis' off-and-on girlfriend who transported Britt and him after the robbery. Our opinion regarding Britt's direct appeal summarized Clairday's testimony.[5] We stated in part:

---

[4] See *Britt, supra* note 1.

[5] See *Britt, supra* note 2.

Clairday testified that [on the night of the robbery] she began receiving several messages from Davis around 4:30 a.m. Davis told Clairday in "hushed tones" that he needed her to pick him up. Clairday recalled that Davis sounded agitated and frustrated. When Clairday arrived in a borrowed Buick Regal, Davis entered the front seat. Clairday asked Davis why he had called her to pick him up. Davis stated that Britt needed to come along with them too, because Britt had a gun. Clairday had met Britt once before, but she did not know him and did not want him in her vehicle. She and Davis argued briefly before Britt entered the vehicle. Clairday questioned Britt, and Britt handed his .22-caliber revolver to Clairday.

Clairday stopped at a gas station and then proceeded to the apartment of her friend, Larry Lautenschlager, in Council Bluffs. At the apartment, Davis and Britt waited near the door as Clairday gave the .22-caliber revolver to Lautenschlager and asked him to get rid of it. Clairday also requested a change of clothing for both Davis and Britt, and then she took Davis to the bathroom to talk. Clairday testified that Davis was mumbling, appeared scared, and had apparently soiled himself. Clairday helped Davis change his clothes and noticed that he had blood on his shoe. After Clairday left the bathroom, she walked outside and observed Britt burning a pair of gloves on a grill.

Clairday transported Davis and Britt to Davis' apartment. She accompanied Davis upstairs, while Britt remained downstairs. Davis wanted to leave town, so Clairday helped him pack a bag. She also continued to speak with Davis, who still appeared scared. They finished packing and went downstairs to load the vehicle.

Clairday, Davis, and Britt then drove to [Greg] Logemann's apartment. Davis went inside alone. Back in the vehicle, Clairday asked Britt what was wrong with Davis, but Britt did not respond. When Davis

returned, Clairday drove to a restaurant in Council Bluffs. Thereafter, she drove to the apartments behind another restaurant and waited in the vehicle while Davis and Britt went inside. Davis returned alone. Clairday testified that after this point, Davis appeared scared and was crying as he related to her why he had called her in the middle of the night and what had happened. Clairday then dropped Davis off at his apartment.

. . . .

A few days after the murders, Clairday drove out to the country near Ashland, Nebraska, where she disposed of several items, including the .22-caliber revolver. She asked Lautenschlager to drive her to a lake north of Ashland. Clairday exited the vehicle alone and, after waiting for Lautenschlager to drive out of sight, threw the revolver into a culvert. The revolver was wrapped up in a tank top secured by a headband. A crime laboratory technician testified about her understanding to the effect that following Clairday's arrest, she led law enforcement to the hiding place where officers recovered the revolver, which was rusty and dirty and had a grip that was wrapped in black electrical tape.[6]

The jury found Britt guilty of all charges. After the court found that Britt met the definition of a "habitual criminal" within the meaning of § 29-2221, it sentenced Britt to life imprisonment on the murder convictions and lengthy terms of imprisonment on the weapons convictions. Represented by his trial counsel, Britt unsuccessfully appealed his convictions and sentences.[7]

### 3. Postconviction

Britt filed a timely pro se motion for postconviction relief.[8] Britt also moved for counsel to be appointed to represent

---

[6] *Id.* at 367-69, 940 N.W.2d at 274-75.

[7] See *Britt, supra* note 2.

[8] See Neb. Rev. Stat. §§ 29-3001 to 29-3004 (Reissue 2016).

him.[9] Although not in the record, the State's brief explains that after it failed to respond to the district court's request for the State's perspective on Britt's motion for postconviction relief, Britt filed a "motion for default judgment."[10]

The district court overruled Britt's motions without an evidentiary hearing. Britt filed a motion to reconsider, which the district court also overruled.

Britt then filed a timely appeal. On our own motion, we submitted the appeal without oral argument.[11]

## III. ASSIGNMENTS OF ERROR

Britt assigns, restated, that the court erred in overruling his (1) motion for postconviction relief without an evidentiary hearing, (2) motion to appoint counsel, and (3) motion for default judgment.

## IV. STANDARD OF REVIEW

[1] In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief.[12]

## V. ANALYSIS

### 1. Postconviction Principles

[2,3] Postconviction relief is available to a prisoner in custody under sentence who seeks to be released on the ground that there was a denial or infringement of his or her constitutional rights such that the judgment was void or voidable.[13] Thus, in a motion for postconviction relief, the defendant

---

[9] See § 29-3004.

[10] Brief for appellee at 11.

[11] See Neb. Ct. R. App. P. § 2-111(B)(1)(a) (rev. 2021).

[12] *State v. Parnell*, 305 Neb. 932, 943 N.W.2d 678 (2020).

[13] *State v. Martinez*, 302 Neb. 526, 924 N.W.2d 295 (2019).

must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable.[14]

[4,5] A court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the U.S. or Nebraska Constitution.[15] If a postconviction motion alleges only conclusions of fact or law, or if the records and files in the case affirmatively show that the defendant is entitled to no relief, the court is not required to grant an evidentiary hearing.[16]

[6] When a district court denies postconviction relief without conducting an evidentiary hearing, an appellate court must determine whether the petitioner has alleged facts that would support the claim and, if so, whether the files and records affirmatively show that he or she is entitled to no relief.[17]

## 2. Motion for Postconviction Relief

First, Britt assigns that the court erred by overruling his motion for postconviction relief. Britt argues that he received ineffective assistance of counsel by his counsel's failure to call impeachment witnesses. Britt asserts that his counsel should have called Davis, Melanie and Shawn Dvorak, and two Ashland, Nebraska, police officers as witnesses to impeach Clairday's testimony. This is Britt's first opportunity to assert ineffective assistance of counsel, because the same counsel represented Britt at trial and on direct appeal.

[7,8] To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*,[18] the defendant must

---

[14] See *id.*

[15] See *id.*

[16] *Id.*

[17] *State v. Privett*, 303 Neb. 404, 929 N.W.2d 505 (2019).

[18] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.[19] To show prejudice under the prejudice component of the *Strickland* test, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different.[20] A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome.[21] The two prongs of this test may be addressed in either order.[22]

Britt has not shown the requisite probability. One witness' testimony would have been inadmissible, and there is not a reasonable probability that the other witnesses' testimony would have altered the outcome of the case. Each witness' deficiencies will be addressed in turn.

#### (a) Davis

[9,10] Britt cannot prove that he suffered prejudice by his counsel's failure to call Davis as a witness, because the court would not have allowed Davis to testify. At the time of Britt's trial, Davis was challenging his own convictions that resulted from the attempted robbery.[23] If Britt had called Davis to testify, Davis would most likely have invoked his Fifth Amendment protections against self-incrimination. Neb. Rev. Stat. § 27-513(2) (Reissue 2016) makes it clear that courts must avoid having witnesses claim privilege in the presence of the jury whenever practicable.[24] Consequently, "[a]bsent

---

[19] See *Martinez, supra* note 13.

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] See *State v. Davis*, 290 Neb. 826, 862 N.W.2d 731 (2015).

[24] *State v. Clausen*, 307 Neb. 968, 951 N.W.2d 764 (2020).

extraordinary circumstances, trial courts should exercise their discretion to forbid parties from calling witnesses who, when called, will only invoke a privilege."[25]

Here, the court would have barred Britt from calling Davis to testify. Therefore, Britt did not suffer prejudice by his counsel's failure to call Davis as a witness.

### (b) Dvoraks

Britt cannot show that he suffered prejudice by his counsel's failure to call the Dvoraks to testify. Britt argues that his counsel should have called the Dvoraks as witnesses to impeach Clairday's testimony that Britt handed her the gun when she picked up both Davis and him. In Britt's motion for postconviction relief, he asserted that the Dvoraks would have testified that Clairday told them that "[she] picked up . . . Davis by himself [and] he gave her the weapon [and that she] never told the Dvoraks that . . . Davis [was] with anyone at the time that she pick[ed] him up."

[11,12] Prior inconsistent statements of a witness are admissible as impeachment evidence.[26] However, prior inconsistent statements of a witness are not admissible as substantive evidence, unless they are otherwise admissible under the Nebraska Evidence Rules.[27]

While the Dvoraks' testimony regarding what Clairday told them would be hearsay, it would have been admissible for impeachment purposes as a prior inconsistent statement. However, Britt could not use the Dvoraks' testimony as substantive evidence to prove that Clairday did not pick Britt up or that he did not hand her the gun. The testimony would have been solely limited to discrediting Clairday.

There is not a reasonable probability that the Dvoraks' testimony would have altered the outcome of the case. Even

---

[25] See *id.* at 977-78, 951 N.W.2d at 778 (internal quotation marks omitted).

[26] *State v. Rodriguez*, 272 Neb. 930, 726 N.W.2d 157 (2007).

[27] See *id.*

without the Dvoraks' testimony, the jury was keenly aware of Clairday's behavior and propensity to lie. Clairday admitted to the jury that she was a convict and a former methamphetamine addict and that she had lied repeatedly to law enforcement. Therefore, Britt cannot prove that he suffered prejudice by his counsel's failure to call the Dvoraks to testify.

### (c) Ashland Police Officers

[13] While Britt assigns that his counsel should have called the two Ashland police officers who interviewed the Dvoraks to testify, Britt failed to present this argument in his motion for postconviction relief. In an appeal from the denial of postconviction relief, we will not consider for the first time on appeal claims that were not raised in the verified motion.[28] Consequently, we will not consider this argument.

### 3. MOTION TO APPOINT COUNSEL

[14] Next, Britt assigns the court erred by overruling his motion to appoint counsel to represent him. However, Britt failed to provide an argument in his brief. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.[29] Therefore, we decline to address this assignment.

### 4. MOTION FOR DEFAULT JUDGMENT

Finally, Britt assigns that the court erred by overruling his motion for default judgment. Britt argues that because the State failed to file a timely response to his motion for postconviction relief, the court should have awarded him a default judgment and granted his motion.

[15] The record is devoid of any reference to a default judgment motion. It is incumbent upon an appellant to supply

---

[28] *State v. Munoz*, 309 Neb. 285, 959 N.W.2d 806 (2021).

[29] *State v. Stelly*, 308 Neb. 636, 955 N.W.2d 729 (2021).

a record which supports his or her appeal.[30] Absent such a record, as a general rule, the decision of the lower court as to those errors is to be affirmed.[31]

[16] Even if we were to overlook the deficient record, we have explained that the Nebraska Postconviction Act does not authorize the district court to grant postconviction relief without first conducting an evidentiary hearing and making findings of fact and conclusions of law.[32] The court was not empowered to award a default judgment to Britt, and therefore, his assignment lacks merit.

## V. CONCLUSION

Britt failed to assert a claim of ineffective assistance of counsel that warranted an evidentiary hearing. We decline to consider his other assignments of error. We affirm the order of the district court.

Affirmed.

Heavican, C.J., and Freudenberg, J., not participating.

---

[30] *State v. Boche*, 294 Neb. 912, 885 N.W.2d 523 (2016).

[31] *Id.*

[32] See *State v. Jim*, 275 Neb. 481, 747 N.W.2d 410 (2008).