Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/27/2022 08:07 AM CDT

STATE OF NEBRASKA, APPELLEE, V.
ROGER JAEGER, APPELLANT.

___ N.W.2d ___

Filed March 4, 2022.    No. S-21-386.

1. **Postconviction: Constitutional Law: Appeal and Error.** In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief.

2. **Postconviction: Judgments: Appeal and Error.** Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law. When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling.

3. **Postconviction: Constitutional Law: Proof.** The district court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the state or federal Constitution.

4. **Postconviction: Pleadings.** The allegations in a motion for postconviction relief must be sufficiently specific for the district court to make a preliminary determination as to whether an evidentiary hearing is justified.

5. **Postconviction: Constitutional Law: Proof.** An evidentiary hearing is not required on a motion for postconviction relief when (1) the motion does not contain factual allegations which, if proved, constitute an infringement of the movant's constitutional rights rendering the judgment void or voidable; (2) the motion alleges only conclusions of fact or law without supporting facts; or (3) the records and files affirmatively show that the defendant is entitled to no relief.

6. **Postconviction: Appeal and Error.** In appeals from the denial of postconviction relief without an evidentiary hearing, as with all appeals, the alleged errors of the lower court must be both specifically assigned and

specifically argued in the brief of the party asserting the errors to be considered by the appellate court.

7. **Records: Appeal and Error.** The appellate court will not scour the record on appeal to understand unclear arguments or find support for broad conclusions.

8. **Postconviction: Appeal and Error.** The appellate court will not consider allegations not presented to the district court for disposition through the defendant's verified motion for postconviction relief or passed upon by the postconviction court.

9. **Appeal and Error.** Except for instances of plain error, only those issues both raised or passed upon below and specifically assigned and specifically argued on appeal will be considered by the appellate court.

10. **Postconviction.** The defendant's verified motion for postconviction relief is the operative filing before the district court in considering whether to grant an evidentiary hearing.

11. **Postconviction: Appeal and Error.** A postconviction court does not err by failing to consider claims not made in the operative motion for postconviction relief, which are instead raised in other filings.

12. **Effectiveness of Counsel.** A pro se party is held to the same standards as one who is represented by counsel.

13. **Pleas: Waiver.** A voluntary guilty plea or plea of no contest waives all defenses to a criminal charge.

14. **Effectiveness of Counsel: Pleas.** When a defendant pleads guilty or no contest, the defendant is limited to challenging whether the plea was understandingly and voluntarily made and whether it was the result of ineffective assistance of counsel.

15. **Postconviction: Appeal and Error.** A motion for postconviction relief cannot be used to secure review of issues that were or could have been litigated on direct appeal.

16. ____: ____. When the defendant is represented both at trial and on direct appeal by the same counsel, the defendant's first opportunity to assert ineffective assistance of trial counsel is in a motion for postconviction relief.

17. **Effectiveness of Counsel: Proof.** To prevail on a claim of ineffective assistance of counsel, the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense.

18. **Effectiveness of Counsel: Pleas.** The voluntariness of a plea entered upon the advice of counsel depends on whether the advice was within the range of competence demanded of attorneys in criminal cases.

19. **Trial: Effectiveness of Counsel: Presumptions.** In determining whether a trial counsel's performance was deficient, there is a strong presumption that counsel acted reasonably.

20. **Effectiveness of Counsel: Pleas: Proof.** In order to satisfy the prejudice requirement in the context of a plea, the defendant must show that his or her counsel erred and there is a reasonable probability that but for counsel's errors, the defendant would not have pled and would have insisted upon going to trial.

21. **Pleas.** A threat or promise of illegal action may invalidate a plea, but a threat to prosecute when the facts warrant prosecution is not coercive such that a subsequent plea is involuntary.

22. **Effectiveness of Counsel.** Counsel's performance is deficient when it objectively does not equal that of a lawyer with ordinary training and skill in criminal law in the area.

23. ____. As a matter of law, counsel cannot be ineffective for failing to raise a meritless argument to the trial court.

24. ____. The viability of any defense goes to the likelihood of whether a rational defendant would have insisted on going to trial.

25. **Postconviction: Effectiveness of Counsel.** An evidentiary hearing will not be warranted based only upon the prisoner's legal conclusions about the significance of vaguely asserted failures to investigate or to pursue testimony.

26. **Miranda Rights: Arrests.** It is only in the context of a custodial interrogation that the *Miranda* safeguards are considered justified and necessary. The interrogation is not custodial unless a reasonable person would feel the restraint on freedom of movement of the degree associated with a formal arrest.

27. **Pleas: Sentences: Waiver: Appeal and Error.** A voluntary guilty plea or plea of no contest does not waive alleged errors occurring at sentencing.

28. **Claims: Appeal and Error.** Claims that could have been made on direct appeal are procedurally barred.

29. **Effectiveness of Counsel: Appeal and Error.** Claims of ineffective assistance of trial counsel could not have been made on direct appeal when appellate counsel was the same as trial counsel.

30. **Constitutional Law: Due Process: Trial: Judges.** The right to an impartial judge is guaranteed under the Due Process Clauses of the U.S. and Nebraska Constitutions.

31. **Judges: Recusal.** Under the Nebraska Revised Code of Judicial Conduct, a judge must recuse himself or herself from a case if the judge's impartiality might reasonably be questioned.

32. **Judges: Recusal: Presumptions.** A defendant seeking to disqualify a judge on the basis of bias or prejudice bears the heavy burden of overcoming the presumption of judicial impartiality.

33. **Judges: Recusal.** Judicial recusal is required if a reasonable person who knew the circumstances of the case would question the judge's

impartiality under an objective standard of reasonableness, even though no actual bias or prejudice was shown.

34. \_\_\_\_: \_\_\_\_. Judicial rulings alone almost never constitute a valid basis for a bias or partiality motion directed to a trial judge.

35. \_\_\_\_: \_\_\_\_. The fact that the trial judge previously presided over other actions involving the parties and made rulings against one or another of the parties is insufficient to show bias.

Appeal from the District Court for Sarpy County: NATHAN B. COX, Judge. Affirmed.

Roger Jaeger, pro se.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

FREUDENBERG, J.

## I. INTRODUCTION

In an appeal from a motion for postconviction relief, the appellant challenges the district court's denial of his motion without holding an evidentiary hearing. The appellant had alleged multiple instances of ineffective assistance of counsel and a violation of his Fifth Amendment right against self-incrimination. The appellant assigns that the district court erred in denying his motion without holding an evidentiary hearing and in not considering his reply to the State's response to his motion for postconviction relief. We affirm.

## II. BACKGROUND

Roger Jaeger, a middle school teacher, was discovered to possess child pornography after he took his laptop to a local computer shop for repairs. During the course of performing these repairs, the technician observed several hundred, if not thousands, of photographs and videos of pornography, several hundred of which were clearly child pornography. Law enforcement was contacted, and officers identified numerous files containing child pornography.

A police report contained in the presentence investigation report (PSI) reflects that after finding the files, officers obtained a search warrant and went to the school where Jaeger worked to execute it. Jaeger was present at the school, and the officers secured his electronic devices. Jaeger was escorted to a conference room at the school, where the officer read Jaeger his *Miranda* rights before questioning him.

During the course of the interview, Jaeger admitted to viewing and obtaining child pornography for a long time and possessing thousands of images, with a preference for middle-school-aged and high-school-aged children. The officer confronted Jaeger with the fact that there were student yearbook pictures mixed in with the child pornography and asked why they were there. Jaeger responded, "'I do not know.'" He further responded, "'[T]here were just a couple of years, just thought hey, I'll keep track of these ones,'" and then he laughed. The police report indicates that Jaeger was not arrested until the conclusion of the interview.

Jaeger was charged with six counts of possession of child pornography, each a Class IIA felony, in violation of Neb. Rev. Stat. § 28-813.01 (Reissue 2016).

## 1. Plea Hearing

Before trial, the parties informed the district court that a plea agreement had been reached. Pursuant to the agreement, Jaeger was to enter pleas of no contest to four counts of possession of child pornography and the State would dismiss the remaining two counts.

Before accepting the plea agreement, the district court engaged in a colloquy with Jaeger which specifically included questions regarding whether there had been any threats or promises made to induce him to enter his pleas of no contest, to which Jaeger answered, "No." Following the completion of the full colloquy and the State's presentment of a supporting factual basis, the district court found beyond a reasonable doubt that Jaeger understood the nature of the hearing and

was alert and competent to plead. Ultimately, the district court accepted Jaeger's no contest pleas to four counts of possession of child pornography.

The district court ordered the PSI, which was to include a psychosexual evaluation. No objection was made. The court did not issue an order specifically compelling Jaeger to make any statements for the purposes of the PSI or psychosexual evaluation. The matter was scheduled for sentencing.

### 2. Sentencing

At the sentencing hearing, defense counsel advocated for Jaeger to receive probation. Defense counsel highlighted that this was a nonviolent offense and that other similar offenders in the county had been placed on probation. When discussing the psychosexual evaluation in the PSI, defense counsel noted the doctor who evaluated Jaeger believed he was being truthful and cooperative and found the "Good Life Treatment Model" could be completed under community supervision, because Jaeger was a low risk for sexual assault.

Defense counsel further pointed out that the results of the "Static 99" evaluation found Jaeger was a low to moderate risk and the general criminal risk of recidivism was low to moderate; Jaeger had no criminal history; and the "LS/CMI domains" scored Jaeger very low on criminal history, medium in education and employment "because he can't go back to his old job," very low in the family and leisure and recreation categories, and low in the companions, procriminal attitude, and antisocial categories. Finally, counsel noted that the PSI stated it does not appear there would be any significant barriers to Jaeger's participation in any community supervision services and highlighted Jaeger's support in the community based upon the 15 to 20 character letters contained in the PSI. Defense counsel argued that Jaeger was classified as someone the community could supervise in a safe manner with additional terms such as monitoring Jaeger's electronics and vocational rehabilitation.

The State argued that probation would promote a disrespect for the law. The State noted that Jaeger's behavior had been ongoing for close to 20 years while employed as a teacher and that there were over 1,500 images found in his possession. It noted the probation interviewer's description of Jaeger as "controlling and aggressive" during the PSI process.

The district court stated it had reviewed the PSI and noted Jaeger's lack of a criminal record. However, it also considered Jaeger's statements to the probation interviewer, reflected in the PSI, indicating he did not feel like anyone had treated him fairly or justly. The district court took particular issue with a statement Jaeger made regarding teachers' being held to an "impossible standard." The court described as "absurd" Jaeger's apparent belief that expecting teachers to refrain from possessing child pornography was too high of a standard to hold them to. The court observed that Jaeger's statements, reflected in the PSI, contained various rationalizations justifying his behavior as not harmful and blaming others for his addiction and for getting caught. The court also reiterated the State's concern that Jaeger had attempted to control the PSI process and that his behavior was aggressive. Finally, the court was concerned by Jaeger's comment during the police interview about keeping track of the middle-school-aged children whose yearbook pictures were mixed in with his child pornography, which it found "chilling."

The court indicated it had considered all the appropriate sentencing factors, the PSI, and the statements that were received. The court found that Jaeger was not a suitable candidate for probation and that anything less than a statutory sentence would depreciate the seriousness of the offense, promote disrespect for the law, and "would potentially place at jeopardy children in our community."

The court sentenced Jaeger to concurrent terms of 10 to 20 years' imprisonment on each count and ordered Jaeger to register as a sex offender pursuant to the Sex Offender Commitment Act.

### 3. Direct Appeal

Jaeger's trial counsel filed a timely notice of appeal alleging Jaeger's sentences were excessive. The appeal was summarily affirmed by the Nebraska Court of Appeals.

### 4. Motion for Postconviction Relief

Subsequently, Jaeger, pro se, filed a verified motion for postconviction relief. In the motion, Jaeger alleged, first, that counsel was ineffective in failing to "'make reasonable investigations'" as to Jaeger's claim that the interviewing officer did not read him his *Miranda* rights until after he was interviewed. Jaeger claimed counsel refused to investigate when the *Miranda* rights were actually read to him as Jaeger suggested; nor would counsel "enter a [m]otion to [s]uppress the interview." Jaeger asserted that the failure to investigate prejudiced him "by accepting the police report as fact when there were doubts about the accuracy" and left him no option other than to enter into the plea agreement.

Second, Jaeger described that defense counsel had advised him to accept the plea agreement because (1) the prosecutor could charge a separate count of possession for each image found and that he was fortunate to only be charged with six counts and (2) the State could turn the matter over to the federal authorities if he did not accept the plea agreement and he "[stood] a better chance" in state court. Jaeger asserted that in the email chain between the prosecutor and defense counsel, which he attached to the motion, there was no mention of turning over the case to federal prosecutors or additional charges. He then cited the proposition that pleas induced by promises or threats are void and concluded that if the prosecution's threats were made, they were not on record; if the threats were not made, he was coerced into a plea agreement by counsel's erroneous advice.

Third, Jaeger alleged counsel was ineffective for not pursuing Jaeger's request to attempt to recuse the trial judge as biased against him. Jaeger supported his assertion of bias by pointing to the court's denial of his bond reduction request,

the court's grant of expanded media coverage, and events that occurred in a separate civil matter. Jaeger asserted his counsel told him that the judge would not recuse himself and that he stood a better chance with this judge than another. Jaeger stated, "The [j]udge's behavior showed a pattern of prejudice against [Jaeger] and crossed over to actually acting as the [p]rosecution, but [c]ounsel took no action in these situations."

Fourth, Jaeger alleged multiple instances of ineffective assistance of counsel at the sentencing hearing. Jaeger alleged counsel stated Jaeger would have a sex offender registration period of 25 years even though he was arguing for a sentence of probation that would carry only a 15-year registration period; counsel did not correct prosecution's inaccurate statement about Jaeger's length of time viewing underage pornography; and counsel did not protest to Jaeger's "being shackled hand and foo[t] while wearing a county orange uniform in a televised sentencing." Jaeger asserted that "[t]hese behaviors show counsel was aware [Jaeger] would be serving more than a 1 year prison sentence prior to sentencing and was more concerned with appeasing the court than truly advocating for [him]."

Fifth, Jaeger alleged counsel was ineffective in his direct appeal by giving Jaeger "no say" in what issues would be raised on appeal. He cited to *Jones v. Barnes*[1] for the proposition that the client must be allowed to decide what issues are presented. Jaeger described that he had sent counsel a letter stating all the inaccuracies he could remember, but counsel claimed "he could only challenge abuse of discretion due to the plea deal and the [j]udge's rigid implementation of procedure." Further, Jaeger alleged counsel did not meet with him while drafting the appeal nor did Jaeger see a copy of the appeal until after it had been submitted.

Lastly, Jaeger alleged the court had ordered him to submit to and participate in the PSI and psychosexual evaluation

---

[1] *Jones v. Barnes*, 463 U.S. 745, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983).

without Jaeger's having sufficient awareness of the likely consequences of any statements made. He asserted that his pleas of no contest did not operate as a total waiver of his privilege against self-incrimination and that his Fifth Amendment rights were violated by the court's use of his statements in the PSI against him at sentencing.

### 5. State's Response to Jaeger's Motion

The State filed a response to Jaeger's motion for postconviction relief, arguing Jaeger's motion should be denied without an evidentiary hearing for several reasons. These included the argument that Jaeger had failed to articulate facts showing he was entitled to relief.

### 6. Jaeger's Response

On March 24, 2021, Jaeger filed an unverified responsive document addressing some of the positions argued by the State entitled "Defendant's Response to State's Response to Motion for Postconviction Relief." In this filing, Jaeger purported to set forth "Reasons to Grant an Evidentiary Hearing." In addition to legal arguments, Jaeger attempted to supplement the factual allegations of his motion for postconviction relief, in order to address the State's assertion of inadequate allegations to warrant an evidentiary hearing.

Regarding his claim that counsel failed to investigate when the *Miranda* advisement was given, Jaeger stated that "[h]ad counsel investigated and found the police report included information prior to the Miranda [r]ights," Jaeger "would have continued his plea of [n]ot [g]uilty, forcing the State to prove the files on a computer that was purchased refurbished and a back-up drive purchased at a garage sale actually belonged to [him]."

Regarding his claim that counsel's erroneous advice coerced him into accepting the State's first plea offer, Jaeger added the allegation that his "law library research of [f]ederal charges revealed they would only have one charge for multiple files with points added for the number of images, resulting in a

36 to 60 month sentence." Thus, in accepting the plea agreement, he had relied on counsel's erroneous advice about being better off in a state court.

### 7. Order on Motion for Postconviction Relief

The district court denied postconviction relief without an evidentiary hearing. In its order, the court did not mention the responsive document filed by Jaeger. It summarized the allegations of the motion as one claim that the PSI violated Jaeger's right against self-incrimination and five claims of ineffective assistance by (1) failing to investigate when law enforcement read him his *Miranda* rights; (2) "advising [Jaeger] to plead because the possibility of additional charges or his case being taken federally" was not discussed in the emails pertaining to his plea agreement; (3) stating during sentencing that the sex offender registration period would be 25 years, failing to correct a statement by the prosecutor during sentencing, and failing to object to Jaeger's being shackled at the sentencing hearing; (4) failing to do anything in response to the trial court's bias; and (5) failing to meet with Jaeger and "allowing him to dictate the issues to be argued when drafting the appeal."

The court found that Jaeger failed to allege how trial counsel's actions fell below an objective standard of reasonableness and how the alleged deficient performance actually prejudiced the case. The court also described that Jaeger's claims were merely conclusory, with no supporting facts, and that any attack on his convictions, with the exception of claims that his pleas were involuntary or the result of ineffective assistance of counsel, had been waived.

Jaeger timely appealed the district court's order denying postconviction relief to the Court of Appeals, and we moved the case to our docket.

### III. ASSIGNMENTS OF ERROR

Jaeger assigns that the district court erred in (1) not holding an evidentiary hearing on the issues raised in his motion

for postconviction relief and (2) not considering his response to the State's response to his motion for postconviction relief.

## IV. STANDARD OF REVIEW

[1] In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief.[2]

[2] Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law. When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling.[3]

## V. ANALYSIS

Jaeger asserts, broadly, that the court erred in denying postconviction relief without first conducting an evidentiary hearing. And he argues that this error occurred, in part, because the court erroneously ignored the additional allegations made in his responsive filing. Before addressing the specific claims of postconviction relief that Jaeger believes the court should have held an evidentiary hearing on, we set forth the general legal principles governing our analysis of appeals from the denial of postconviction claims without an evidentiary hearing.

[3-5] The district court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the state or federal Constitution.[4] However, the allegations in a motion for postconviction relief must be sufficiently specific for the district court to make a preliminary determination as to whether an evidentiary hearing is justified.[5] An evidentiary hearing is

---

[2] *State v. Munoz*, 309 Neb. 285, 959 N.W.2d 806 (2021).

[3] *Id*.

[4] See *State v. Britt*, 310 Neb. 69, 963 N.W.2d 533 (2021).

[5] *State v. Henderson*, 301 Neb. 633, 920 N.W.2d 246 (2018).

not required on a motion for postconviction relief when (1) the motion does not contain factual allegations which, if proved, constitute an infringement of the movant's constitutional rights rendering the judgment void or voidable; (2) the motion alleges only conclusions of fact or law without supporting facts; or (3) the records and files affirmatively show that the defendant is entitled to no relief.[6]

[6,7] When a district court denies postconviction relief without conducting an evidentiary hearing, an appellate court determines de novo whether the petitioner has alleged facts that would support the claim and, if so, whether the files and records affirmatively show that he or she is entitled to no relief.[7] The appellate court does not conduct this review sua sponte, however; as with all appeals, the alleged errors of the lower court must be both specifically assigned and specifically argued in the brief of the party asserting the errors to be considered by the appellate court.[8] The appellate court will not scour the record on appeal to understand unclear arguments or find support for broad conclusions.[9]

[8,9] Furthermore, the appellate court will not consider allegations not presented to the district court for disposition through the defendant's verified motion for postconviction relief or passed upon by the postconviction court.[10] Except for instances of plain error,[11] only those issues both raised or passed upon below and specifically assigned and specifically argued on appeal will be considered by the appellate court.

---

[6] *State v. Munoz, supra* note 2.

[7] See *id.*

[8] See *State v. McGuire*, 299 Neb. 762, 910 N.W.2d 144 (2018).

[9] See *In re App. No. C-4973 of Skrdlant*, 305 Neb. 635, 942 N.W.2d 196 (2020).

[10] See, *State v. Stelly*, 308 Neb. 636, 955 N.W.2d 729 (2021); *State v. Munoz, supra* note 2; *State v. Deckard*, 272 Neb. 410, 722 N.W.2d 55 (2006).

[11] See, e.g., *State v. Childs*, 309 Neb. 427, 960 N.W.2d 585 (2021).

## 1. Responsive Filing

[10] The defendant's verified motion for postconviction relief is the operative filing before the district court in considering whether to grant an evidentiary hearing. It is also the filing that the appellate court is limited to in determining de novo if the petitioner has alleged facts that would support the claim.[12]

[11] The operative motion in this case did not include the unverified motion entitled "Defendant's Response to State's Response to Motion for Postconviction Relief." In *State v. Thorpe*,[13] we explained that a postconviction court does not err by failing to consider claims not made in the operative motion for postconviction relief, which are instead raised in other filings. In *Thorpe*, the filing at issue was referred to as an "opposition to the State's motion to dismiss," but the substance of Jaeger's responsive filing was similar.

[12] Jaeger made the filing in opposition to the State's response setting forth reasons the State believed the motion should be denied without an evidentiary hearing, and Jaeger did not seek leave to amend his operative motion for postconviction relief. Assuming the district court could have considered Jaeger's unverified responsive filing as a motion for leave to amend, it did not, and the operative motion was not in fact amended. In Nebraska, a pro se party is held to the same standards as one who is represented by counsel.[14] The district court did not err in viewing the responsive filing as no more than what it purported to be and in acting accordingly.

Because the responsive filing was not part of the operative motion, we find no merit to Jaeger's assertion that the district court erred in failing to consider the additional allegations of his responsive filing when determining whether to grant an evidentiary hearing. Likewise, in considering the merits of

---

[12] See *State v. Thorpe*, 290 Neb. 149, 858 N.W.2d 880 (2015).

[13] *Id*.

[14] *State v. Huston*, 291 Neb. 708, 868 N.W.2d 766 (2015).

Jaeger's arguments on appeal, we will not consider allegations that Jaeger did not present below through his operative motion for postconviction relief.

With this in mind, we turn to Jaeger's more specific arguments that the district court erred in finding the allegations of the verified motion for postconviction relief did not warrant an evidentiary hearing.

## 2. Pleas

[13,14] We first address Jaeger's postconviction attacks on his convictions, on the grounds that his pleas were the result of ineffective assistance of counsel. Generally, a voluntary guilty plea or plea of no contest waives all defenses to a criminal charge.[15] Thus, when a defendant pleads guilty or no contest, the defendant is limited to challenging whether the plea was understandingly and voluntarily made and whether it was the result of ineffective assistance of counsel.[16]

[15,16] A motion for postconviction relief cannot be used to secure review of issues that were or could have been litigated on direct appeal,[17] but when, as here, the defendant is represented both at trial and on direct appeal by the same counsel, the defendant's first opportunity to assert ineffective assistance of trial counsel is in a motion for postconviction relief.[18]

[17-20] To prevail on a claim of ineffective assistance of counsel, the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense.[19] The voluntariness of a plea entered upon the advice of counsel depends on whether the advice was within the range of competence demanded of attorneys

---

[15] *State v. Anderson*, 305 Neb. 978, 943 N.W.2d 690 (2020).

[16] *Id.*

[17] *State v. Hessler*, 288 Neb. 670, 850 N.W.2d 777 (2014).

[18] *State v. Reames*, 308 Neb. 361, 953 N.W.2d 807 (2021).

[19] *State v. Abdulkadir*, 293 Neb. 560, 878 N.W.2d 390 (2016).

in criminal cases.[20] In determining whether a trial counsel's performance was deficient, there is a strong presumption that counsel acted reasonably.[21] In order to satisfy the prejudice requirement in the context of a plea, the defendant must show that his or her counsel erred and there is a reasonable probability that but for counsel's errors, the defendant would not have pled and would have insisted upon going to trial.[22]

Jaeger makes two arguments that his plea was the result of ineffective assistance of counsel. He argues, first, that his plea was the result of defense counsel's deceptive tactics with respect to the possibility of federal prosecution. Second, he argues that but for counsel's failure to investigate the timing of the *Miranda* advisement during the police interview, he would not have pled to the charges.

### (a) Possibility of Federal Prosecution

The district court did not err in denying Jaeger's postconviction claim that his pleas were the product of counsel's advisement of the possibility of federal prosecution. The claim set forth in the verified motion was poorly articulated, but reasonably understood as asserting that because the attached emails failed to reflect the prosecution affirmatively threatened to turn the case over to federal officials, his pleas were the product of counsel's misrepresentations as to a threat by the prosecution inducing his pleas. Alternatively, if the threat was made, Jaeger asserted his pleas were rendered involuntary by virtue of it.

[21] We observe that in the plea colloquy, Jaeger denied his pleas were the product of any threats. But even if the motion raised a factual question as to whether the prosecution made an affirmative threat to turn the case over to federal prosecutors, a finding that such a threat was made would not have led

---

[20] *State v. Reddick*, 230 Neb. 218, 430 N.W.2d 542 (1988).

[21] *State v. Carlson*, 260 Neb. 815, 619 N.W.2d 832 (2000).

[22] *Id.*

to a finding that Jaeger's postconviction claim had merit. A threat or promise of illegal action may invalidate a plea, but a threat to prosecute when the facts warrant prosecution is not coercive such that a subsequent plea is involuntary.[23] It is not illegal for a state prosecutor to drop a case and refer it instead to federal prosecutors.[24] If such a threat were made, it would not have invalidated the voluntariness of Jaeger's pleas.

[22] If the State, on the other hand, did not make such a threat, it would not mean, under the facts alleged, that Jaeger's pleas were the result of ineffective assistance of counsel. Jaeger did not assert in his motion that counsel told him the prosecution was affirmatively making such threats. Instead, he alleged counsel told him "if the first plea offering was not accepted, [p]rosecution could turn the whole case over to [f]ederal [p]rosecutors, and [Jaeger] stands a better chance in the [d]istrict [c]ourt." Jaeger did not allege counsel was incorrect in stating that the prosecution had the ability to turn the case over to federal prosecutors and that he stood a better chance with a State prosecution—or that a lawyer of ordinary training and skill in the area would not have so believed. In other words, Jaeger alleged insufficient facts to demonstrate deficiency. Counsel's performance is deficient when it objectively does not equal that of a lawyer with ordinary training and skill in criminal law in the area.[25]

Thus, we agree with the district court that the verified motion did not contain factual allegations pertaining to the threat (or lack thereof) of federal prosecution, which, if proved, would constitute an infringement of Jaeger's constitutional rights rendering his convictions void or voidable.

---

[23] *State v. Robbins*, 200 Neb. 723, 265 N.W.2d 226 (1978).

[24] See, *U.S. v. Williams*, 47 F.3d 658 (4th Cir. 1995); *U.S. v. Allen*, 954 F.2d 1160 (6th Cir. 1992); *U.S. v. Gray*, 382 F. Supp. 2d 898 (E.D. Mich. 2005).

[25] See *State v. Malone*, 308 Neb. 929, 957 N.W.2d 892 (2021).

### (b) Failure to Investigate Timing
### of *Miranda* Advisement

With respect to the allegation that counsel was deficient by failing to investigate when Jaeger was given his *Miranda* advisement, Jaeger fails to articulate on appeal any support for his conclusory statement that he would not have pled to the charges but for this allegedly deficient failure to investigate. He does not argue that counsel was ineffective by failing to move to suppress his statements made during the police interview. He does not even assert on appeal that the *Miranda* warning was not given until the conclusion of the interview. Jaeger's argument is vague and conclusory, and we are not compelled to address it.

[23,24] But even if we generously supplement Jaeger's argument in his appellate brief with the allegations made in his verified motion, it would not change the result of this appeal. As a matter of law, counsel cannot be ineffective for failing to raise a meritless argument to the trial court.[26] Relatedly, the viability of any defense goes to the likelihood of whether a rational defendant would have insisted on going to trial.[27] Jaeger's motion for postconviction relief failed to assert in even a conclusory manner that a motion to suppress would have had merit. More importantly, Jaeger did not raise in his verified motion sufficient specific factual allegations that, if proved true, could demonstrate a motion to suppress would have been meritorious.

[25] Jaeger did not allege what counsel could have found during an investigation, which would have supported Jaeger's contention that the *Miranda* advisement was not given until after the interview and would have refuted the officer's statement in the police report that the advisement was given before the interview commenced. An evidentiary hearing will not

---

[26] See *State v. Schwaderer*, 296 Neb. 932, 898 N.W.2d 318 (2017).

[27] See *State v. Yos-Chiguil*, 281 Neb. 618, 798 N.W.2d 832 (2011).

be warranted based only upon the prisoner's legal conclusions about the significance of vaguely asserted failures to investigate or to pursue testimony.[28]

[26] Also, Jaeger did not allege facts that would demonstrate he was in custody at the time of the interview. And it is only in the context of a custodial interrogation that the *Miranda* safeguards are considered justified and necessary. The interrogation is not custodial unless a reasonable person would feel the restraint on freedom of movement of the degree associated with a formal arrest.[29] Without further factual allegations pertaining to custody, it can only be ascertained from the record that the police interview was conducted in a conference room at the school and before Jaeger was formally placed under arrest. This is insufficient to establish that the interview was a custodial interrogation.

We have previously described a postconviction motion that lacks the specific factual allegations necessary to support the claims made as no more than a fishing expedition for evidence that might aid in obtaining postconviction relief and therefore insufficient to warrant an evidentiary hearing.[30] For Jaeger's motion to warrant an evidentiary hearing on counsel's failure to raise a *Miranda* claim, the motion needed to allege specific facts supporting a finding that, as a threshold matter, the *Miranda* safeguards were required. It did not.

The district court did not err in finding that the allegations of counsel's failure to investigate when the *Miranda* advisement was given did not warrant an evidentiary hearing.

### 3. SENTENCING

[27-29] We next consider Jaeger's claims in relation to his sentencing. A voluntary guilty plea or plea of no contest

---

[28] See, e.g., *State v. Abdulkadir, supra* note 19; *State v. Banks*, 289 Neb. 600, 856 N.W.2d 305 (2014).

[29] See *State v. Rogers*, 277 Neb. 37, 760 N.W.2d 35 (2009).

[30] See *State v. Seberger*, 284 Neb. 40, 815 N.W.2d 910 (2012).

does not waive alleged errors occurring at sentencing; nevertheless, claims that could have been made on direct appeal are procedurally barred.[31] Claims of ineffective assistance of trial counsel could not have been made on direct appeal when appellate counsel was the same as trial counsel.[32]

#### (a) Fifth Amendment

Claims of trial error, on the other hand, could have been made on direct appeal. Jaeger's first argument is that the court erred in denying him an evidentiary hearing on the court's alleged violation of his Fifth Amendment right against self-incrimination by ordering that the psychosexual evaluation be included in the PSI. Although Jaeger notes in his appellate brief that defense counsel did not object at sentencing to the court's reliance upon any of the statements from the psychosexual evaluation, there was no indication in the verified motion that his Fifth Amendment claim was tied to a claim of ineffective assistance of counsel, either at sentencing or on appeal. The district court's description of this claim recognized that fact. Because Jaeger's Fifth Amendment claim is not a claim of ineffective assistance of counsel, it could have been brought on direct appeal and it is procedurally barred. The postconviction court did not err in denying it without an evidentiary hearing.

#### (b) Failure to Move to Recuse

[30,31] Jaeger's second argument with respect to sentencing is that the district court erred in denying him an evidentiary hearing on his claim that defense counsel was ineffective by failing to move to recuse the trial judge as being biased against him. The right to an impartial judge is guaranteed under the Due Process Clauses of the U.S. and Nebraska Constitutions.[33]

---

[31] See, *State v. Wilkinson*, 293 Neb. 876, 881 N.W.2d 850 (2016); *State v. York*, 273 Neb. 660, 731 N.W.2d 597 (2007).

[32] See *State v. Williams*, 295 Neb. 575, 889 N.W.2d 99 (2017).

[33] *State v. Fuentes*, 302 Neb. 919, 926 N.W.2d 63 (2019).

Under the Nebraska Revised Code of Judicial Conduct, a judge must recuse himself or herself from a case if the judge's impartiality might reasonably be questioned.[34] Under Neb. Rev. Code of Judicial Conduct § 5-302.11(A)(1), such instances in which the judge's impartiality might reasonably be questioned specifically include where "[t]he judge has a personal bias or prejudice concerning a party or a party's lawyer . . . ."

[32,33] A defendant seeking to disqualify a judge on the basis of bias or prejudice bears the heavy burden of overcoming the presumption of judicial impartiality.[35] Judicial recusal is required if a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice was shown.[36]

In support of his conclusion that the trial judge was biased, Jaeger alleged in his motion that the judge had (1) allowed expanded news media coverage at his sentencing hearing, (2) not allowed him to appear at a civil nonharassment hearing while he was in jail, (3) issued the nonharassment order to the accusing party, and (4) taken a recess during a bond reduction hearing to print out the nonharassment order, to prove there was a complaint against him. On appeal, Jaeger generally refers to a pattern of behavior by the judge showing prejudice, but only highlights the judge's not allowing him to appear as his own counsel at the nonharassment hearing and taking a recess during the bond review. He asserts these actions made the judge both accuser and adjudicator.

[34,35] Judicial rulings alone almost never constitute a valid basis for a bias or partiality motion directed to a trial judge.[37] The fact that the trial judge previously presided over other actions involving the parties and made rulings against one

---

[34] *State v. Buttercase*, 296 Neb. 304, 893 N.W.2d 430 (2017).

[35] *Id.*

[36] See *id.*

[37] *Id.*

or another of the parties is insufficient to show bias.[38] We agree with the district court that the alleged facts failed to show actual bias or reason to question the judge's impartiality under an objective standard of reasonableness. As such, counsel could not have been deficient in failing to move for the judge to recuse himself. The district court did not err in denying this claim of ineffective assistance of counsel.

### (c) Failure to Advocate

Jaeger's last argument with respect to sentencing is that defense counsel was ineffective by arguing for probation. He asserts counsel knew Jaeger was likely to be sentenced to a period of incarceration and concludes that, in arguing for probation, defense counsel failed to advocate for him and showed prior knowledge of the sentences to be instituted.

We observe that Jaeger did not specifically allege in his motion for postconviction relief that counsel was ineffective by arguing for probation, though Jaeger did allege defense counsel knew he would be serving at least a year in prison and Jaeger generally alleged a lack of advocacy. But the Class IIA felonies for which Jaeger was convicted carried no minimum sentence. The only supporting facts for the conclusory statement that counsel knew Jaeger would be sentenced to incarceration were that counsel misstated the sex offender registration period, failed to correct an alleged misstatement by the prosecution about the length of time Jaeger had been viewing underage pornography, and did not object to Jaeger's being shackled at the sentencing hearing. These allegations do not support the inference that counsel knew Jaeger would be sentenced to a period of incarceration.

In any event, we find no support for Jaeger's argument that defense counsel failed to advocate for him at sentencing. The record shows that counsel advocated strenuously on Jaeger's behalf, citing to numerous facts specific to Jaeger, which counsel reasonably believed might sway the district court to

---

[38] See *id*.

impose sentences of probation. Thus, the record affirmatively refutes this claim of ineffective assistance of counsel at sentencing, and the district court did not err in denying it without an evidentiary hearing.

### (d) Unidentified General Claim

Jaeger makes a vague statement in his appellate brief that he made "several claims of ineffectiveness at the sentencing hearing that prejudiced [him] before the court and were used to justify the excessive sentence imposed."[39] We find this insufficient to specifically raise on appeal any additional claims of ineffective assistance of counsel at sentencing.

### 4. Direct Appeal

Lastly, Jaeger argues the district court erred by failing to have an evidentiary hearing on his allegations that defense counsel did not meet with him to discuss what would be raised on direct appeal, disregarded the issues Jaeger had informed counsel of in mail correspondence, and did not give Jaeger the opportunity to review the appeal before it was submitted. Since Jaeger's trial counsel brought the direct appeal, a postconviction motion was Jaeger's first opportunity to make this claim and it was not procedurally barred.

In his motion for postconviction relief, Jaeger alleged he had sent counsel a letter stating all the inaccuracies he could remember, but counsel "claimed he could only challenge abuse of discretion due to the plea deal and the [j]udge's rigid implementation of procedure." Jaeger also alleged counsel did not meet with him while the appeal was being drafted, and Jaeger did not see a copy of the appeal until after it was submitted.

Jaeger did not allege that he was unable to communicate with counsel at all. Indeed, the alleged facts reflected communications between Jaeger and his counsel. Rather, Jaeger claimed these alleged facts demonstrated that he "was given no say in what [c]ounsel would appeal and did not have any

---

[39] Brief for appellant at 9.

part in formulating or reviewing the appeal" and violated the mandate that the client be allowed to decide what issues are presented on appeal—which he asserted was stated by the U.S. Supreme Court in *Jones v. Barnes*.[40]

But *Jones* does not stand for this proposition. To the contrary, in *Jones*, the Supreme Court expressly disapproved of a per se rule that appellate counsel must raise every nonfrivolous issue requested by the client.[41] Instead, the Court recognized the "superior ability of trained counsel in the examination into the record, research of the law, and marshalling of arguments on [the appellant's] behalf."[42]

Thus, the law would not support a finding of ineffective assistance of counsel based on Jaeger's general allegation that counsel failed to press on appeal the issues Jaeger requested. And although *Jones* does not mean that the strategic decisions of appellate counsel are not subject to examination,[43] Jaeger did not specify what issues, precisely, he had asked counsel to pursue.

The facts here are similar to those in *State v. Dean*,[44] wherein we held the district court did not err in failing to grant the petitioner an evidentiary hearing upon the allegations that (1) counsel did not raise on direct appeal any of the issues he requested; (2) the petitioner did not know the contents of the appeal until it was filed; (3) the petitioner met only once with counsel after the conviction and before the appeal, despite counsel's promise to meet again; and (4) counsel did not return his calls and filed an appellate brief without his notice or approval. We explained that without allegations as to what specific assignments of error the petitioner had wished for

---

[40] *Jones v. Barnes, supra* note 1.

[41] See *id.*

[42] *Id.*, 463 U.S. at 751 (internal quotation marks omitted).

[43] See *State v. Dean*, 264 Neb. 42, 645 N.W.2d 528 (2002).

[44] *Id*.

counsel to present in the direct appeal, the motion for postconviction relief presented mere conclusions of fact and law.

The district court did not err in denying without an evidentiary hearing Jaeger's claim that counsel was ineffective on direct appeal.

## VI. CONCLUSION

For the foregoing reasons, we affirm the order of the district court denying, without an evidentiary hearing, Jaeger's motion for postconviction relief.

Affirmed.