IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. STEWART

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

CORDELL C. STEWART, APPELLANT.

Filed March 4, 2025.    No. A-24-288.

Appeal from the District Court for Douglas County: DUANE C. DOUGHERTY, Judge. Affirmed.

Gerald L. Soucie for appellant.

Michael T. Hilgers, Attorney General, and Melissa R. Vincent for appellee.

RIEDMANN, Chief Judge, and BISHOP and ARTERBURN, Judges.

RIEDMANN, Chief Judge.

INTRODUCTION

Cordell C. Stewart appeals from the order of the district court for Douglas County denying his motion for postconviction relief following an evidentiary hearing. Because we find that the district court did not err in its determination that Stewart failed to show he received ineffective assistance of trial counsel and was not entitled to postconviction relief, we affirm the order of the district court.

BACKGROUND

Following a 2006 jury trial, Stewart was convicted of second degree assault, use of a deadly weapon to commit a felony, and felon in possession of deadly weapon; he was also found to be a habitual criminal. Stewart received a sentence of 12 to 15 years' imprisonment for his conviction of felon in possession of a deadly weapon, and sentences of 15 to 20 years' imprisonment for each

of the other convictions. The sentences for assault and possession of a deadly weapon were ordered to be served concurrently, and the sentence for use of a deadly weapon was modified on appeal to be served consecutively to both those sentences. The same counsel represented Stewart at trial and on direct appeal.

*Evidence at Trial and Direct Appeal.*

Briefly, the evidence at trial showed that on May 15, 2003, Stewart shot Chiwanda Ammons following a verbal altercation. Ammons had three gunshot wounds in his hand and one in his abdomen. Ammons identified Stewart as the shooter, and the State presented the testimony of three other witnesses who also identified Stewart as the shooter.

Stewart called one witness, Chrishawn Conway. Conway was friends with Stewart, was present the day of the shooting, and testified that she was the shooter. According to Conway, Ammons had a gun that fell to the ground during a scuffle. Conway picked up the gun and fired three or four times to disperse the crowd. Conway never went to the police, and the first time she told anyone about the incident was about a year later when she told Stewart's lawyer. The jury found Stewart guilty. Following his convictions, Stewart filed a direct appeal. Stewart assigned multiple errors, but this court determined that all the assigned errors failed and modified his sentences as previously indicated.

*Postconviction Proceedings.*

Stewart filed a verified motion for postconviction relief in 2011, and an amended verified motion for postconviction relief in 2012. Only two claims from the amended verified motion for postconviction relief are at issue on appeal: ineffective assistance of trial counsel when counsel (1) failed to call all witnesses Stewart requested and (2) failed to preserve and raise the issue of prosecutorial misconduct and conflict of interest.

During the next decade, depositions were taken and there were changes in representation for both Stewart and the State. On July 27, 2023, the district court held an evidentiary hearing at which it took judicial notice of the bill of exceptions from the underlying trial, this court's opinion in Stewart's direct appeal, the mandate, and the order following appeal. It accepted the deposition testimony of Stewart, trial counsel, and two witnesses Stewart alleged he had requested trial counsel to call at trial. We recount only that evidence which is relevant to Stewart's assigned errors on appeal.

Felicia Warner and Stewart share a child, born in 2004. Warner was present at the shooting and identified Conway as the shooter. Warner never went to the police about the shooting, and when contacted on an unrelated matter she refused to speak to police about the shooting. Prior to trial, Warner told trial counsel she was available and wanted to testify. Stewart asked trial counsel to call Warner as a witness, but trial counsel did not do so.

Trial counsel recalled that he and Stewart discussed calling Warner as a witness, but ultimately decided against it. Trial counsel had concerns with the length of time it had taken for Warner to come forward, that she had refused to speak to police, and trial counsel also recalled that Warner had some hesitation about testifying. Trial counsel felt Conway, rather than Warner, was the best way to present the evidence to the jury while minimizing the risk of credibility being impeached.

Robert Blackson, Stewart's cousin, was also present at the shooting and identified Conway as the shooter. Blackson had been released from prison approximately 6 months prior to the shooting and he feared being accused, so he moved to Lincoln days after the shooting and never went to the police. Blackson recalled that Stewart contacted him from trial counsel's office, and Blackson told trial counsel what had occurred that day. Trial counsel later called Blackson and said they would set a meeting, but no one ever contacted Blackson after that phone call. Blackson told trial counsel he was willing and available to testify.

Stewart wanted Blackson called as a witness. Stewart initially knew only that Blackson resided somewhere in Lincoln, so there was trouble locating him. Stewart was eventually able to provide trial counsel with a phone number for Blackson and trial counsel had a phone call with Blackson. Blackson told Stewart that trial counsel said he would contact Blackson if he was needed.

Trial counsel believed he tried to locate Blackson, but because Stewart knew only that Blackson was somewhere in Lincoln, trial counsel's investigator could not locate him. Trial counsel recalled speaking with Blackson on the phone at some point and telling Blackson he would have Blackson meet with an investigator. Though trial counsel made attempts to contact Blackson after that phone call, Blackson never answered or returned trial counsel's calls.

Stewart realized on the first day of trial that one of the prosecutors had represented him in 1989 on a charge that was dismissed, and again in 1992 when he was convicted of a drug related charge. According to Stewart, he told trial counsel to file a motion to disqualify the prosecutor because Stewart believed it was a conflict of interest for the prosecutor to prosecute him, and Stewart would not waive his right to a conflict free trial. Stewart believed he expressed this to trial counsel multiple times prior to the start of trial, but trial counsel ignored his requests. In closing arguments, the prosecutor made a reference to drugs, and Stewart felt that the prosecutor could only have known about his past criminal activity because of the prior representation. Stewart told trial counsel that the prosecutor had committed prosecutorial misconduct and asked trial counsel to object. Trial counsel refused.

Trial counsel, however, recalled that Stewart informed him of the prosecutor's prior representation on the second day of trial. After trial counsel and Stewart discussed the matter, it was decided that Conway's testimony was the best way to address the charges, so they would go forward. Conway had no criminal history and was willing to admit that she had committed a felony. If a new trial became necessary because of a mistrial, there was no guarantee Conway would be available to testify. According to trial counsel, after the prosecutor's reference to drugs in closing arguments, he and Stewart had the same conversation, that they had Conway's testimony, and they would go forward.

*District Court Order.*

The district court denied the motion for postconviction relief. It found trial counsel did not call Warner as a witness as a matter of reasonable trial strategy, and that trial counsel attempted to contact Blackson but was unable to secure his presence; thus, Stewart had failed to show deficient performance. Additionally, the district court found that Stewart failed to show prejudice; the jury had found Conway's testimony not credible and there was no reason to believe it would have found her credible if Warner and Blackson had testified. The district court found trial counsel credibly

testified that the decision not to object to the prosecutor's participation or closing argument comment was part of a reasonable trial strategy, and that Stewart had failed to show deficient performance. Stewart appeals.

## ASSIGNMENTS OF ERROR

Stewart assigns, reordered and restated, that the district court erred in failing to grant his motion for postconviction relief based on ineffective assistance of counsel when trial counsel (1) failed to subpoena and call witnesses as requested by Stewart, (2) failed to timely object to the prosecutor's participation at trial, and (3) failed to withdraw on direct appeal.

## STANDARD OF REVIEW

In an evidentiary hearing on a motion for postconviction relief, the trial judge, as the trier of fact, resolves conflicts in the evidence and questions of fact. *State v. Sierra*, 31 Neb. App. 852, 990 N.W.2d 49 (2023). An appellate court upholds the trial court's findings unless they are clearly erroneous. *Id*.

Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact. *Id*. When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. *Id*. With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision. *State v. Sierra, supra*.

## ANALYSIS

Stewart appeals from a denial of postconviction relief based on claims of ineffective assistance of trial counsel. Postconviction relief is a very narrow category of relief, available only to remedy prejudicial constitutional violations that render the judgment void or voidable. *State v. Newman*, 310 Neb. 463, 966 N.W.2d 860 (2021). The Nebraska Postconviction Act is intended to provide relief in those cases where a miscarriage of justice may have occurred; it is not intended to be a procedure to secure a routine review for any defendant dissatisfied with his or her sentence. *Id*.

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington, supra*, the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Sierra, supra*. To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id*. In determining whether trial counsel's performance was deficient, there is a strong presumption that counsel acted reasonably. *Id*. A reasonable strategic decision to present particular evidence, or not to present particular evidence, will not, without more, sustain a finding of ineffective assistance of counsel. *Id*. Strategic decisions made by trial counsel will not be second-guessed so long as those decisions are reasonable. *Id*.

To show prejudice under the prejudice component of the *Strickland* test, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the

result of the proceeding would have been different. *State v. Sierra, supra*. A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome. *Id*. The likelihood of a different result must be substantial, not just conceivable. *Id*.

In an evidentiary hearing for postconviction relief, the postconviction trial judge, as the trier of fact, resolves conflicts in evidence and questions of fact, including witness credibility and the weight to be given a witness' testimony. *Id*. Where competent evidence supports the district court's findings, the appellate court will not substitute its factual findings for those of the district court. *Id*.

*Failure to Call Witnesses*.

Stewart assigns that the district court erred in failing to grant his motion for postconviction relief based on ineffective assistance of counsel when trial counsel failed to subpoena and call witnesses as requested by Stewart, specifically Warner and Blackson. The district court determined that Stewart failed to show deficient performance because trial counsel made a reasonable strategic decision not to call Warner as a witness and had tried to secure Blackson's appearance. We agree.

As it relates to Warner, trial counsel testified that in discussions with Stewart, they decided that Warner would not be called as a witness as part of the trial strategy. Warner and Stewart share a child who was born prior to trial, and Warner had refused to speak to police about the shooting. Trial counsel also recalled that Warner had expressed some hesitation about testifying. Trial counsel felt there was less of a risk of Conway's credibility being impeached as compared to Warner. Trial counsel's decision not to call Warner as a witness was based on reasonable trial strategy. Stewart has failed to show deficient performance.

As it relates to Blackson, the district court found that Stewart failed to show deficient performance because the evidence showed trial counsel tried to contact Blackson but was unable to secure his presence. We agree.

Trial counsel testified that Stewart advised him that Blackson was living in Lincoln, but with no additional information, trial counsel's investigator was unable to locate Blackson. Trial counsel had one phone conversation with Blackson, but after that call, Blackson would not respond to further calls. It is unclear whether the investigator's attempts to locate Blackson in person occurred prior to the phone call and is also unclear what contact information trial counsel had for Blackson prior to, and during, trial. Trial counsel was not deposed until 2023, 17 years after trial occurred. As such, he was unable to specifically recall exact dates and sequences of events as it related to his knowledge of Blackson's whereabouts. But trial counsel was able to recall that he attempted to secure Blackson's presence but was hampered by a lack of information. The district court found trial counsel's testimony credible. Because the evidence supports the district court's finding that trial counsel made reasonable efforts to secure Blackson's testimony, Stewart failed to show deficient performance.

The district court also determined that Stewart failed to show prejudice as it relates to this claim. However, because we agree that Stewart failed to show deficient performance by his trial counsel, we need not address the prejudice prong. Stewart's assigned error of ineffective assistance of counsel based on failure to call Warner and Blackson as witnesses fails.

*Failure to Object to Prosecutor's Participation.*

Stewart assigns that the district court erred in failing to grant his motion for postconviction relief based on ineffective assistance of counsel when trial counsel failed to timely object to the prosecutor's participation at trial. The district court found that not objecting to the prosecutor's participation was a reasonable strategic decision and that Stewart had failed to show trial counsel performed deficiently. We agree.

Trial counsel believed Stewart told him of the prior attorney-client relationship on the second day of trial. In discussions between trial counsel and Stewart after this disclosure, they decided the best choice was to go forward with Conway's testimony. Conway had no criminal history and was willing to admit to a felony. Trial counsel was concerned that if something happened that necessitated a new trial, there was risk that Conway could be become unavailable as a witness. He believed that Stewart's defense hinged on Conway's testimony. These same reasons apply to the decision not to object to the statement in closing arguments.

Based on this evidence, we cannot say that the strategic decision trial counsel made not to object to the prosecutor's participation or comment was unreasonable. At the time of trial, Conway was willing to testify that she had committed the crime for which Stewart was charged, but there was no guarantee that Conway would be willing and/or able to testify at a new trial. Although the jury ultimately did not find Conway's testimony credible, this does not make the trial strategy unreasonable. Stewart has failed to show deficient performance.

Stewart argues in his brief on appeal that trial counsel misrepresented to the district court, and to this court on direct appeal, the date on which he learned of the prosecutor's prior representation of Stewart. However, this claim was not raised in Stewart's amended verified motion for postconviction relief nor is it addressed in the district court's order denying postconviction relief. An appellate court will not consider allegations not presented to the district court for disposition through the defendant's verified motion for postconviction relief or passed upon by the postconviction court. *State v. Jaeger*, 311 Neb. 69, 970 N.W.2d 751 (2022). As such, we will not address this argument. Stewart has failed to show deficient performance, and the district court did not err in denying postconviction relief on this claim.

*Failure to Withdraw on Direct Appeal.*

Stewart assigns that the district court erred in failing to grant his motion for postconviction relief based on ineffective assistance of counsel when trial counsel failed to withdraw from representing him on direct appeal. As noted by the State, Stewart's amended motion for postconviction relief did not assert this as a ground for postconviction relief. Although Stewart's reply brief argues that this claim was presented to the district court in his post evidentiary hearing brief, this is not sufficient to raise it before the district court. The defendant's verified motion for postconviction relief is the operative filing before the district court in considering whether to grant an evidentiary hearing. *State v. Jaeger, supra*. It is also the filing that the appellate court is limited to in determining de novo if the petitioner has alleged facts that would support the claim. *Id.*

In *State v. Jaeger, supra*, the defendant filed a motion for postconviction relief. The State responded, requesting that it be denied without an evidentiary hearing. The defendant responded, setting forth additional allegations. The district court did not consider these additional allegations in deciding to deny the motion without an evidentiary hearing. On appeal, the Nebraska Supreme

Court found no error, stating that a postconviction court does not err by failing to consider claims not made in the operative motion for postconviction relief, which are instead raised in other filings.

Here, although an evidentiary hearing was held, the operative filing before the district court was Stewart's verified amended motion for postconviction relief. This verified amended motion did not raise trial counsel's failure to withdraw on direct appeal; thus, it was not raised as a claim for postconviction relief. The district court did not err in failing to consider this claim. Likewise, in an appeal from the denial of postconviction relief, we will not consider for the first time on appeal claims that were not raised in the verified motion. *State v. Britt*, 310 Neb. 69, 963 N.W.2d 533 (2021). This assigned error fails.

CONCLUSION

Having found that all of Stewart's assigned errors fail, we affirm the order of the district court denying Stewart's amended motion for postconviction relief.

AFFIRMED.