Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/09/2023 09:05 AM CDT

**State of Nebraska, appellee, v.
Jonathan J. Sierra, appellant.**

___ N.W.2d ___

Filed May 2, 2023.    No. A-22-211.

1. **Postconviction: Evidence.** In an evidentiary hearing on a motion for postconviction relief, the trial judge, as the trier of fact, resolves conflicts in the evidence and questions of fact.
2. **Appeal and Error.** An appellate court upholds the trial court's findings unless they are clearly erroneous.
3. **Effectiveness of Counsel: Appeal and Error.** Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact. When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision.
4. **Effectiveness of Counsel: Proof.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.
5. ____: ____. To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.
6. **Trial: Effectiveness of Counsel: Presumptions.** In determining whether trial counsel's performance was deficient, there is a strong presumption that counsel acted reasonably.
7. **Trial: Effectiveness of Counsel: Evidence.** A reasonable strategic decision to present particular evidence, or not to present particular evidence, will not, without more, sustain a finding of ineffective assistance of

counsel. Strategic decisions made by trial counsel will not be second-guessed so long as those decisions are reasonable.

8. **Effectiveness of Counsel: Proof.** To show prejudice under the prejudice component of the *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), test, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different.

9. **Effectiveness of Counsel: Proof: Words and Phrases.** A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome. The likelihood of a different result must be substantial, not just conceivable.

10. **Records: Appeal and Error.** It is incumbent upon an appellant to supply a record which supports his or her appeal. Absent such a record, as a general rule, the decision of the lower court as to those errors is to be affirmed.

11. **Criminal Law: Evidence: Proof.** An alibi defense requires a defendant to establish that (1) he or she was at a place other than where the crime was committed and (2) he or she was at such other place for such a length of time that it was impossible to have been at the place where and when the crime was committed.

12. \_\_\_\_: \_\_\_\_: \_\_\_\_. A defendant asserting an alibi defense bears a heavy evidentiary burden.

13. **Probation and Parole: Search and Seizure.** Generally, Nebraska courts uphold warrantless searches pursuant to a condition of a probation order.

14. **Appeal and Error.** An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.

Appeal from the District Court for York County: James C. Stecker, Judge. Affirmed.

Stephen T. Knudsen, of Whitney, Newman, Mersch, Otto & Grafton, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Matthew Lewis for appellee.

Riedmann, Bishop, and Arterburn, Judges.

Arterburn, Judge.

## INTRODUCTION

Jonathan J. Sierra was convicted in 2018 in the York County District Court of burglary, conspiracy to commit burglary, and several counts of theft involving the theft of a truck, trailer, and various mechanic's tools from a local automotive repair shop. Sierra filed a motion for postconviction relief in the York County District Court asserting several claims that his trial counsel was ineffective. Following an evidentiary hearing, the district court found that Sierra had not met his burden in proving that his trial counsel was ineffective. Upon our review of the record, we affirm.

## BACKGROUND

In December 2017, Sierra was charged in an eight-count information with one count of burglary, one count of conspiracy to commit burglary, four counts of theft by unlawful taking ($5,000 or more), one count of theft by unlawful taking ($1,500 to $5,000), and one count of criminal mischief (less than $500). The Nebraska Supreme Court summarized the underlying circumstances of the crimes as follows:

> Sierra was involved in the theft of a truck and trailer which he then used to assist in the theft of automotive tools from a mechanic's garage in York, Nebraska. The complaint was based in an incident which occurred in the early morning of October 15, 2017, when a window of [an automotive shop] in York was broken and tools were stolen from the premises. The tools belonged, separately, to a co-owner of the garage business and his two employees. The co-owner, Andrew Wilkinson, notified the officer investigating the break-in, Sgt. Michael Hanke, that his checkbook and debit card had also been stolen.

*State v. Sierra*, 305 Neb. 249, 252, 939 N.W.2d 808, 816-17 (2020).

The district court appointed the York County public defender as Sierra's counsel. On April 23, 2018, a hearing was held due to Sierra's request that his counsel withdraw, citing a breakdown in the attorney-client relationship. Sierra informed the court that his counsel had not spoken to him about any of the discovery materials in his case despite his numerous requests. Sierra said he eventually just stopped calling her, because he was not getting answers. Trial counsel responded that Sierra was not willing to accept her advice despite the fact that she had provided him a significant amount of discovery materials. Ultimately, Sierra's request was denied and the public defender remained as trial counsel.

Prior to trial, the State and trial counsel signed a discovery stipulation agreeing to have any discovery materials delivered to opposing counsel by March 5, 2018, or as soon as it was reasonably discovered. The parties also agreed that the absolute deadline for production of discovery materials was 10 days before the start of trial. Despite this agreement, trial counsel provided the State just 5 days prior to the trial with a list of five witnesses she intended to call at trial. The witnesses included Sierra's brother, Anthony Sierra; Sierra's mother, Cynthia Sierra; Sierra's girlfriend; and two individuals who were in jail with Sierra. In response, the State filed a motion in limine to exclude those witnesses from testifying. At the hearing, the State indicated that there was no explanation as to the nature of the witnesses' testimony, but that the State suspected defense counsel intended to present an alibi defense. However, the State also noted that defense counsel had not filed a notice of alibi defense as required by Neb. Rev. Stat. § 29-1927 (Reissue 2016). Sierra's trial counsel indicated she no longer planned on calling Sierra's girlfriend as a witness. Trial counsel stated she did not necessarily intend to present exhibits for an alibi defense but asked that the court allow her to explore that defense should she choose to do so in the interest of justice. The court granted the State's motion in limine prohibiting defense counsel from calling her witnesses with

the exception of Anthony, who was also named on the State's list of endorsed witnesses. The prohibition also extended to exhibits related to an alibi defense.

At trial, Sgt. Michael Hanke of the York Police Department presented a general timeline of the investigation after law enforcement was notified of the theft at the automotive shop on October 15, 2017. Hanke testified that upon arrival, law enforcement first reviewed surveillance video from other businesses in the area. According to Hanke, the videos showed that there were two individuals who stole a pickup truck from the automotive shop parking lot. At approximately 4:45 a.m., the two individuals then took the truck to a nearby pizza restaurant, where they stole an enclosed white trailer and attached it to the truck before returning to the automotive shop. Approximately 30 minutes later, video showed the truck and trailer leaving the area.

Hanke testified that the next day, Wilkinson was notified that someone had attempted to use the stolen debit card at a Walmart store in Norfolk, Nebraska. Wilkinson provided that information to the York Police Department. Hanke contacted personnel at the Norfolk Walmart and was able to obtain pictures from a security camera showing two individuals using the stolen debit card on the afternoon of October 15, 2017. Hanke also received photographs taken by surveillance cameras in a Walmart store in York, Nebraska, showing the same two individuals within that store at approximately 7:30 a.m. on October 15, 2017, the same day as the burglary at the automotive shop. Walmart personnel at the York store suspected the individuals in the photographs had shoplifted clothing there, given that one of them was wearing clothing when exiting different from what he was wearing on entry.

Maggie Wolfe, an asset protection associate at the York Walmart, testified about the process of obtaining the surveillance footage of the two individuals. Wolfe identified the individuals in the photograph from the surveillance video as Johnathan Mally and Sierra. Defense counsel did not

object to the identification testimony during direct examination. However, after Wolfe's identification, the following exchange took place when the State offered the photographs into evidence:

[Defense counsel:] I would object on foundation, your Honor.

THE COURT: What foundation?

[Defense counsel:] She hasn't identified what the two — what led her to believe that one of the suspects was . . . Sierra.

THE COURT: Objection overruled. Exhibit 1 will be received.

On cross-examination, Sierra's counsel asked Wolfe how she learned the identities of the individuals in the photograph. Wolfe admitted that she had only seen information in the newspaper and did not independently identify Sierra from the photograph.

Hanke testified that after he received the surveillance footage, a notice went out to all law enforcement asking for assistance in identifying the individuals in the pictures. Sgt. Andrew Yost of the Butler County Sheriff's Department testified at trial that he and the Butler County Sheriff had seen the surveillance photographs from the York Walmart and recognized one of the individuals as Sierra. Based on the information from the Butler County Sheriff's Department, Hanke testified that he was able to develop Mally and Sierra as suspects. Initially, defense counsel did not object to Hanke's testimony. However, as the testimony regarding the identification of Sierra continued, the following exchange was had:

Q. [Prosecutor:] And [a deputy at the Butler County Sheriff's Department] was able to look at the picture from the York Walmart and determine who it was?

A. Yeah, he believed it to be . . . Sierra with . . . Mally.

Q. Okay. Now, was he familiar with . . . Sierra as a local probationer?

A. I'm not sure if he was familiar with him that way but he did let me know —

[Defense counsel:] I'm going to object on this line of questioning. It's hearsay, your Honor.

THE COURT: Sustained.

Hanke went on to testify that after determining Sierra's identity, he obtained a search warrant for Sierra's cell phone data. The data he recovered from the cell service provider showed that Sierra's phone "pinged off" of a cell tower in York, which indicated that the phone was located within 20 miles of York on October 15, 2017, the date of the burglary. Defense counsel did not object to Hanke's testimony about the cell phone data, and the records are not in evidence.

In addition to retrieving the cell phone data, Hanke testified that the Butler County Sheriff's Department conducted a search of Sierra's home. Yost, who participated in the search, testified that the search was conducted with the permission of Sierra's probation officer. According to Yost, the probation order allowed searches of Sierra's residence without a warrant. A copy of the probation order was not offered into evidence. Yost testified that law enforcement officers found and seized a majority of the tools that had been taken from the automotive shop in York. Hanke testified that the stolen truck was recovered after it was abandoned on a road north of the York Walmart and that the stolen trailer was recovered after it was abandoned on a road near St. Edward, Nebraska, not far from where Sierra resided in Genoa, Nebraska.

Hanke testified that the next step in the investigation was an interview with Sierra. According to Hanke, in this first interview, Sierra denied ever being in York, claimed he had nothing to do with the burglary, and stated he possessed the tools because he had purchased them from Mally. Hanke testified that in a second interview, Sierra admitted to being in York. Defense counsel did not object to this line of testimony but cross-examined Hanke about Sierra's story.

Mally was arrested in Columbus, Nebraska. Several of the tools and financial items from the automotive shop were found in his possession afterward. Mally subsequently entered into a plea agreement with the State and testified against Sierra. Mally testified that he knew Sierra through their employment at a truck repair shop. He provided a general timeline of the events on October 15, 2017. Mally estimated that he had met up with Sierra in York "[p]robably" around 11:30 p.m. on October 14, 2017. He then recounted a series of events wherein the window to the automotive shop had been broken by Sierra, followed by his and Sierra's leaving the area to make sure that the window's breaking did not trigger a burglar alarm. Mally said that he and Sierra then returned to the automotive shop, where they stole a truck outside the shop. They then went in the stolen truck to the pizza restaurant, where they stole the enclosed trailer. After obtaining the trailer, they returned to the automotive shop, where they removed some large upright toolboxes full of tools, rolled them into the trailer, and then drove away. According to Mally, he and Sierra stayed in York for a period thereafter, which stay included going into the York Walmart, where he put on clothes that he shoplifted therefrom and got rid of the clothes he had worn during the burglary. Mally identified himself and Sierra in the Walmart surveillance photographs taken at 7:30 a.m. on October 15. Shortly after leaving the York Walmart, they unhooked the trailer from the stolen truck, hooked it up to Mally's pickup truck, and then left. Mally testified that they took the tools because Sierra needed the tools for his job as a mechanic. The majority of the tools were taken to Sierra's residence in Genoa, with Mally's retaining the remainder. Mally denied the existence of any arrangement with Sierra to buy the tools. On cross-examination, defense counsel emphasized the benefits Mally received from the State in exchange for his cooperation.

The owners of the tools, the owner of the truck, and the owner of the trailer all testified regarding the identity and

value of the items stolen. Several of the recovered tools, along with photographs of other stolen items, were received into evidence. Defense counsel made several objections during the State's presentation of evidence, some of which were sustained. Sierra's brother, Anthony, testified for the defense. Anthony testified that he was with Sierra on October 14 and 15, 2017, but not in York. He further testified that on October 15, Mally arrived with a white trailer at a house where he helped unload several tools that Sierra had purchased from Mally. Finally, Anthony said he did not recognize the person in the store surveillance photographs from Walmart.

A jury found Sierra guilty on all counts except for criminal mischief. After the conclusion of the jury trial, but before sentencing, defense counsel was charged with theft by unlawful taking ($5,000 or more) in an unrelated case. Sierra was granted new counsel for sentencing. Sierra was sentenced to 16 to 20 years' imprisonment on each of the Class IIA felony convictions and 1 to 2 years' imprisonment on the Class IV felony conviction. All sentences were ordered to be served concurrently.

Sierra filed a direct appeal, which was heard by the Supreme Court. On appeal, Sierra alleged the district court erred by denying trial counsel's motion to withdraw prior to trial, granting the State's motion in limine, and sentencing Sierra on multiple charges of theft by unlawful taking, in violation of the Double Jeopardy Clause of the U.S. Constitution. *State v. Sierra*, 305 Neb. 249, 939 N.W.2d 808 (2020). In addition, Sierra assigned 13 ineffective assistance of counsel claims. *Id.* The Supreme Court agreed with Sierra's double jeopardy argument and vacated two of the three convictions and sentences for theft by unlawful taking ($5,000 or more) that were based on the theft of the tools from the automotive shop. *Id.* The Supreme Court found the district court did not abuse its discretion by overruling trial counsel's motion to withdraw. *Id.* As to Sierra's ineffective assistance of counsel claims, the Supreme Court found that nine of the claims

could not be resolved on the record before it. *Id.* One of the claims was determined to be insufficiently pled. *Id.* The three remaining ineffective assistance of counsel claims, as well as Sierra's other assignment of error, were found to be without merit. *Id.*

Sierra filed a timely motion for postconviction relief. Sierra was appointed an attorney and subsequently filed a supplemental motion for postconviction relief alleging the same claims of ineffective assistance of counsel the Supreme Court was not able to resolve on direct appeal. The district court granted the State's motion to dismiss the original motion for postconviction relief and then proceeded to an evidentiary hearing on the supplemental motion.

The evidentiary hearing was held on December 1, 2021. Sierra testified at the hearing. He stated that he first met with his trial counsel 3 or 4 weeks after she was appointed, while they were in court. This first meeting lasted only about a minute, according to Sierra. Sierra testified that he and trial counsel met only once at the jail. Sierra stated that at this meeting, trial counsel brought a laptop computer for them to use to review surveillance videos together, but she fast-forwarded through the videos. Sierra then said his trial counsel took a phone call and left abruptly. According to Sierra, trial counsel did not discuss trial strategy with him, did not take notes, and did not return to the jail. Sierra testified that he attempted to contact her regarding an alibi defense, but that she did not respond. However, he admitted she did respond to him by making the motions he requested to reduce his bond. Finally, Sierra testified that he and trial counsel did not meet at all in the 7 days leading up to his trial.

At the evidentiary hearing, Sierra offered into evidence several exhibits, including a copy of his trial record; a copy of the Supreme Court's opinion from his appeal; a copy of the State's motion in limine, as well as trial counsel's list of witnesses; an affidavit from Cynthia; and a deposition of trial counsel. In trial counsel's deposition, she stated she was suffering

from what's called "Long Hauler Syndrome" from COVID-19, which meant she was sick for a long period of time and which in her case resulted in a loss of memory. Trial counsel said she did not recall Sierra or anything about his trial or representation. She was able to describe her general process in meeting with and representing criminal defendants but could not provide details regarding her representation of Sierra. Trial counsel responded, "I have no idea," "I do not remember," or "I don't recall" to almost every question about Sierra. Trial counsel's case file and notes were also received into evidence at the evidentiary hearing.

In Cynthia's affidavit, she identified herself as Sierra's mother. She stated that she also tried to contact Sierra's trial counsel regarding a possible alibi defense for Sierra to no avail. In the affidavit, Cynthia stated that if she had testified at trial, she would have said that she, Sierra, Anthony, and Sierra's girlfriend were fixing the walls in the bathroom of her house in Genoa until "approximately" 11 p.m. on October 14, 2017. Cynthia also stated she would have testified that Sierra told her that his coworker was going to be bringing a load of tools he was purchasing to their house and that she saw the coworker coming with the truck and trailer on October 15.

The district court took the matter under advisement. In an order dated March 4, 2022, the district court denied Sierra's motion for postconviction relief. As to each of the allegations of ineffective assistance, the district court found that Sierra failed to establish either deficient performance of counsel or prejudice. Sierra appeals from the district court's order denying his motion for postconviction relief.

## ASSIGNMENTS OF ERROR

On appeal, Sierra assigns that trial counsel was ineffective for failing to (1) file notice of or present alibi evidence, (2) file a witness and exhibit list, (3) effectively communicate with Sierra, (4) file a motion to suppress evidence obtained

from Sierra's residence, (5) object to or make motions regarding the testimony of certain witnesses, (6) request a cautionary jury instruction on accomplice testimony, and (7) maintain her law license. He argues that the district court should have sustained his postconviction motion based on each of the foregoing bases.

## STANDARD OF REVIEW

[1,2] In an evidentiary hearing on a motion for postconviction relief, the trial judge, as the trier of fact, resolves conflicts in the evidence and questions of fact. *State v. Stricklin*, 310 Neb. 478, 967 N.W.2d 130 (2021). An appellate court upholds the trial court's findings unless they are clearly erroneous. *Id.*

[3] Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact. *Id.* When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. *Id.* With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision. *State v. Stricklin, supra.*

## ANALYSIS

*General Principles of Ineffective*
*Assistance of Counsel.*

[4-7] To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington, supra*, the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Stricklin, supra*. To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* In determining whether trial counsel's performance was deficient, there is

a strong presumption that counsel acted reasonably. *State v. Jaeger*, 311 Neb. 69, 970 N.W.2d 751 (2022). A reasonable strategic decision to present particular evidence, or not to present particular evidence, will not, without more, sustain a finding of ineffective assistance of counsel. *State v. Newman*, 310 Neb. 463, 966 N.W.2d 860 (2021). Strategic decisions made by trial counsel will not be second-guessed so long as those decisions are reasonable. *Id.*

[8,9] To show prejudice under the prejudice component of the *Strickland* test, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. *State v. Stricklin, supra.* A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome. *Id.* The likelihood of a different result must be substantial, not just conceivable. See *id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)).

[10] In an evidentiary hearing for postconviction relief, the postconviction trial judge, as the trier of fact, resolves conflicts in evidence and questions of fact, including witness credibility and the weight to be given a witness' testimony. *State v. Stricklin, supra*. Where competent evidence supports the district court's findings, the appellate court will not substitute its factual findings for those of the district court. *Id.* It is incumbent upon an appellant to supply a record which supports his or her appeal. *State v. Britt*, 310 Neb. 69, 963 N.W.2d 533 (2021). Absent such a record, as a general rule, the decision of the lower court as to those errors is to be affirmed. *Id.*

*Failing to File Notice of or Present Alibi
Evidence and Failing to Timely File
Witness and Exhibit List.*

Sierra first assigns and argues that trial counsel was ineffective for failing to file notice of or present alibi evidence.

He further argues that trial counsel was ineffective by failing to timely file witness and exhibit lists. As part of a discovery agreement with the State, trial counsel was required to provide any discovery, including a list of witnesses and exhibits the defense intended to use at trial, no later than 10 days prior to trial. Despite this, trial counsel did not present her witness list until 5 days prior to the first day of trial. As a result, trial counsel was prohibited from presenting the listed witnesses. Similarly, Sierra was prohibited from putting on an alibi defense due to trial counsel's failure to file a notice of alibi.

The witness list produced by Sierra's counsel for trial named five witnesses: Anthony, Cynthia, Sierra's girlfriend, and two individuals who were in jail with Sierra prior to his trial. Of those, one witness, Anthony, still testified for the defense because he was on the State's witness list. At the hearing on the motion in limine, trial counsel informed the court that she no longer intended to call Sierra's girlfriend as a witness. Due to trial counsel's failure to meet the discovery deadline, the court prohibited the defense from calling Cynthia, as well as the two other individuals. In his postconviction motion, Sierra has presented evidence relative only to what Cynthia's testimony would be. As such, we will not consider the other witnesses Sierra, through trial counsel, sought to add. We do, however, consider the testimony of Anthony regarding Sierra's whereabouts on the days in question which was given at trial. In her deposition, trial counsel stated that she could not remember any specifics regarding Sierra and his trial due to memory loss from COVID-19. Therefore, we have no evidence as to what reasons trial counsel may have had for failing to file a notice of alibi and witness list in a timely fashion.

It is clear that trial counsel was deficient in failing to meet the foregoing deadlines. However, Sierra has not established that he was prejudiced. Based on the record presented, the only impact of trial counsel's deficiency was that Cynthia was prevented from testifying. According to Sierra, and the

affidavit provided by Cynthia at the evidentiary hearing, had Cynthia been called as a witness, she would have testified that Sierra was working at their home in Genoa until approximately 11 p.m. on the night preceding the burglary at the automotive shop. At trial, Mally testified that he met up with Sierra in York at around 11:30 p.m. on October 14, 2017. The district court agreed with the State's argument that Cynthia's testimony did not contradict the evidence presented at trial. In its order, the district court explained:

> The evidence presented indicated that the crime was committed sometime after working hours on Friday, October 13, 2017 but before Sunday, October 15, 2017. Given the testimony of . . . Mally, Sergeant Hanke, [and the victims], there is no reasonable probability the outcome would have been different. [Sierra] failed to establish a viable alibi through the evidence at the trial on the Motion for Post-Conviction Relief. Cynthia . . . does not place [Sierra] at a location other than where the crime was committed at the time the crime was committed. [Her] testimony does not make it impossible for [Sierra] to have been in [York] at the time the crimes were committed. Cynthia . . . only accounts for the presence of her son up to the time that he could or would have left to travel to York to commit the crime.

[11,12] An alibi defense requires a defendant to establish that (1) he or she was at a place other than where the crime was committed and (2) he or she was at such other place for such a length of time that it was impossible to have been at the place where and when the crime was committed. *State v. Stricklin*, 310 Neb. 478, 967 N.W.2d 130 (2021). A defendant asserting an alibi defense bears a heavy evidentiary burden. *Id.* Section 29-1927 requires a defendant to provide notice to the county attorney of the intention to rely on an alibi defense at least 30 days prior to trial. Such notice requirement may be waived by the presiding judge if necessary in the interests of justice. § 29-1927.

We first note that despite the court's order denying Sierra the ability to present an alibi defense, Anthony was allowed to testify. Anthony testified that he and Sierra were together on the day of the burglary and that he was not in York that day. Clearly, the jury did not find Anthony's testimony placing Sierra in another town at the time of the burglary to be credible. Further, Sierra cannot show that the addition of Cynthia's testimony would have created a reasonable probability that the result of the trial would have been different. At best, Cynthia's testimony indicates that Sierra left their home around 11 p.m. Mally's testimony was that he met Sierra in York "probably" around 11:30 p.m. These times are not necessarily in conflict, particularly given that the times given are approximate. Moreover, Mally's testimony, along with the video evidence, establishes that the actual burglary and thefts occurred over the course of several hours on the morning of October 15, 2017. Mally and Sierra are captured in photographs leaving the York Walmart at approximately 7:30 a.m. Based on the totality of the evidence, we cannot see how the addition of Cynthia's testimony to that of Anthony would have created a reasonable probability that the outcome of the trial would be different. Her testimony would not make it impossible for Sierra to have participated in the burglary and thefts occurring in York over the course of the succeeding few hours. The jury rejected Anthony's testimony which, if believed, would have provided an alibi. We cannot see how Cynthia's testimony would have made Anthony's testimony more believable. Therefore, we agree with the district court that Sierra was not prejudiced by the exclusion of Cynthia's testimony or by trial counsel's failure to timely file a notice of alibi and witness or exhibit list.

*Failing to Effectively Communicate.*

Sierra next argues that his trial counsel was ineffective for failing to effectively communicate with him. Sierra asserts that trial counsel met with him only twice prior to trial.

The district court noted that trial counsel also communicated with Sierra by responding to messages he sent and that she requested recesses during trial at least four times to confer with Sierra. The district court held that Sierra failed to demonstrate prejudice based on trial counsel's level of communication with Sierra. We agree.

During the evidentiary hearing, Sierra indicated that his biggest grievance was that he was unable to communicate with trial counsel regarding his alibi defense. As we previously discussed, Sierra's proffer of additional alibi evidence produced at the postconviction hearing is not sufficient to demonstrate a reasonable probability that the result of the trial would have been different. The district court's findings that trial counsel communicated with Sierra through messages and during his trial are supported by the record. Sierra claims that trial counsel refused to answer any of his calls. He states trial counsel met with him only twice and that one of those meetings was cut short when she received a phone call and left abruptly. Unfortunately, in her deposition, trial counsel offered no specific insights into the level of contact she had with Sierra either prior to or during trial. However, the record made at trial counsel's first motion to withdraw offers some insight into communications between Sierra and herself:

> Your Honor, as [Sierra] stated in his attachment on the Inmate Request Form, he feels there's been a breakdown in attorney-client relationship with a lack of trust and drastically divergent views on best strategies for defense. I have tried to talk to him about different things. He will not take any of my advice. I provided him with 500 pages of discovery. He said, "This is all bogus." So it's pretty hard to talk to somebody about their case and about their discovery when they refuse to listen, and it's kind of reached that point.

In addition, in her deposition testimony, trial counsel testified to her standard practices with respect to contact with clients who are being held in jail: She first provided an

information sheet to them to fill out and then provided them with copies of discovery materials received from the prosecutor as soon as they were received. She made it a point to meet with incarcerated clients within 1 week of court appointment after she had a chance to review the initial file. In a first meeting, she would explain that conversations with her were confidential and that she would not divulge any client communication to other people. She preferred not to talk with an incarcerated client on the phone about anything substantive. She always provided materials requested in messages from inmates and generally provided her clients with copies of pleadings as she received them. Her practice was to meet with her clients during the days immediately before hearings. In general, trial counsel stated that she had a lot of contact with her clients and that during meetings, she was engaged and available to them. She stated that she would file motions, such as a motion to suppress, if a client requested it. She also testified that she would talk to potential witnesses suggested by her clients.

Ultimately, the postconviction trial judge, as the trier of fact, resolves conflicts in the evidence and questions of fact, including witness credibility and the weight to be given a witness' testimony. See *State v. Stricklin*, 310 Neb. 478, 967 N.W.2d 130 (2021). Here, the district court discounted Sierra's testimony and found that Sierra had not demonstrated that trial counsel failed to effectively communicate with him. The court went on to find that Sierra also failed to demonstrate any prejudice in this regard. We will not disturb the district court's finding. While it would be preferable to have trial counsel's testimony directly addressing her communication with Sierra, we find that the totality of the record cited herein and by the district court supports the court's finding regarding deficient performance.

Finally, Sierra has not established how the outcome of his trial would have been different if there had been more communication between him and trial counsel. Other than his

purported alibi defense, Sierra has not shown what points of the trial, defense strategies, or other subject matter he would have liked to discuss with his trial counsel. Sierra has failed to show how he was prejudiced by the amount of communication he had with trial counsel.

*Failing to File Motion to Suppress.*

Sierra next argues that trial counsel was ineffective for failing to file a motion to suppress the evidence removed from his residence in Genoa. A large number of the tools stolen from the automotive shop were recovered from Sierra's residence. Law enforcement investigators conducted a warrantless search of this residence pursuant to a search clause in Sierra's probation order in an unrelated case. According to Sierra, it was unclear whether the residence searched was his residence. However, Sierra does not aver the residence is not his. At the evidentiary hearing, Sierra admitted he was on probation at the time of the search. At trial, Yost testified that Sierra's probation officer provided permission for the search of Sierra's residence. At trial, Anthony testified that he lived with Sierra, Cynthia, and Sierra's girlfriend in Genoa. In her affidavit, Cynthia states that this very group was working on the bathroom walls in the same residence and that tools were coming to that residence. According to Cynthia's affidavit, Sierra told her he would not be able to help pay his share of the bills because he was buying the tools from the person who was bringing them to the residence. No evidence was presented indicating Sierra was living at a place other than the residence that was searched.

[13] Nebraska courts have long upheld warrantless searches pursuant to a condition of a probation order. See *State v. Colby*, 16 Neb. App. 644, 748 N.W.2d 118 (2008) (citing *State v. Morgan*, 206 Neb. 818, 295 N.W.2d 285 (1980), and *State v. Lingle*, 209 Neb. 492, 308 N.W.2d 531 (1981)). Trial counsel will not be found deficient for failing to file a frivolous motion to suppress. Because the search of Sierra's

residence was a valid search with permission granted by Sierra's probation officer, trial counsel was not ineffective for not filing a motion to suppress the evidence obtained from the search of the residence.

*Failing to Object to Certain*
*Testimony at Trial.*

Sierra's next assignment of error is that the court erred in finding that trial counsel was not ineffective for "not objecting to or making motions regarding the testimony of certain witnesses." Sierra's supplemental motion for postconviction relief complained of several items of testimony that he alleged to be objectionable. Those items included the testimony of Wolfe and Hanke with respect to identifications of Mally and Sierra in the Walmart surveillance photographs from both York and Norfolk. He also alleged ineffective assistance with respect to trial counsel's failure to object to Hanke's testimony regarding the location where the trailer was recovered, the items found in the search of Sierra's residence, the cell phone records that provided location data as to Sierra's phone on October 15, 2017, and statements made by Sierra in a "proffer" interview. On appeal, however, Sierra argues only that the district court erred in regard to finding no prejudice with regard to trial counsel's failure to object to the identification testimony of Wolfe and Hanke.

We question whether Sierra's referral to "the testimony of certain witnesses" is sufficiently assigned as error. See *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019). However, assuming without deciding that this assignment of error has been sufficiently stated, we will consider Sierra's argument regarding the identification testimony of Wolfe and Hanke.

Sierra argues that trial counsel was ineffective for failing to object to the identification testimony of Sierra by Wolfe and Hanke. Wolfe identified Sierra as being one of the persons depicted in the surveillance photographs from the York Walmart. Hanke identified Sierra as being one of

the individuals seen in surveillance photographs taken in the Norfolk Walmart. Sierra argues that this testimony was "at least objectionable, and lacked the proper foundation and hearsay protections which otherwise dissuade such evidence from being offered." Brief for appellant at 15. The district court held that Sierra did not establish prejudice from this testimony, because his codefendant, Mally, also identified Sierra in the photographs.

While trial counsel did not object to Wolfe's testimony, she did object to the admission of the photographs. The photographs were received into evidence over trial counsel's objection. She also exposed on cross-examination that Wolfe had no independent basis for her identification of Sierra. After hearing Wolfe's full testimony, including that given under cross-examination, the jurors were provided the opportunity to review the photographs for themselves and make their own judgments regarding the identification of the individuals pictured.

Likewise, trial counsel did not initially object to Hanke's testimony regarding the identification of Sierra in the photographs. We note, as did the district court, that Hanke's testimony was not received as direct identification evidence. Rather than offering the identification testimony for the truth of the matter, Hanke was explaining the process law enforcement went through to develop Sierra as a suspect, which ultimately led officers to conduct a search of Sierra's cell phone records and his residence, where many of the tools stolen from the automotive shop were recovered. As Hanke's explanation continued, trial counsel did make a hearsay objection that was sustained.

In any event, the identification testimony of Wolfe and Hanke was cumulative given the testimony provided by Mally. As a codefendant, Mally provided a full timeline of the events he and Sierra participated in throughout the night of October 14, 2017, and the morning of October 15. As part of that testimony, Mally explained that after stealing the

tools from the automotive shop, he and Sierra went to the York Walmart to get a change of clothes. Mally positively identified himself and Sierra in the surveillance photographs. He also identified himself in the surveillance photographs of the Norfolk Walmart where an attempt was made to use a credit card stolen from the automotive shop. Clearly, Mally's testimony was also sufficient for admission of the photographs, which are remarkably clear, into evidence. Given Mally's testimony and the proper admission of the photographs, there is no reasonable probability that the outcome of Sierra's case would have been different had trial counsel objected to Wolfe's and Hanke's testimony. Therefore, Sierra has not established that his trial counsel was ineffective for failing to object to the identification testimony.

*Failing to Request Cautionary*
*Jury Instruction.*

[14] Sierra next argues that trial counsel was ineffective for failing to request a cautionary jury instruction regarding accomplice testimony. We note that Sierra produced no evidence of what the cautionary instruction should have been at the evidentiary hearing. We further note that on appeal, Sierra's argument is simply a restatement of his assignment of error and an assertion that he was prejudiced. No further argument is given. We have long held that an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019). Therefore, we will not address this assignment of error.

*Failing to Maintain Her Law License.*

Finally, Sierra assigns and argues that trial counsel was ineffective for failing to maintain her law license. In support of this assignment, Sierra cites to the meeting between trial counsel and himself at the jail that was cut short when she received a personal phone call. Sierra argues that "it can be implied that the phone call was such that the investigation

and/or criminal charges played a role in her leaving" and her ongoing criminal investigation affected her overall ability to represent him in this case. Brief for appellant at 16-17. We disagree.

There is no evidence that trial counsel was not licensed to practice law at the time she was representing Sierra. In fact, trial counsel did not surrender her license until August 10, 2020, well after her representation of Sierra. See *State ex rel. Counsel for Dis. v. Waldron*, 307 Neb. 343, 948 N.W.2d 795 (2020). The circumstances relating to trial counsel's legal troubles and eventual forfeiture of her law license were unrelated to Sierra's case. There is absolutely no evidence that the phone call trial counsel received at the jail involved her criminal investigation. We will not make such an assumption. No other evidence was provided showing that trial counsel was unable to adequately represent Sierra. In fact, after the conclusion of the jury trial when trial counsel was formally charged with a felony, she withdrew as Sierra's attorney and he received new counsel for sentencing. Sierra has not shown that trial counsel was ineffective for failing to maintain her law license after representing him.

## CONCLUSION

Upon our review of the record, we hold that the district court was not clearly erroneous in overruling Sierra's supplemental motion for postconviction relief. The evidence presented at the evidentiary hearing demonstrates as to each of Sierra's allegations of ineffective assistance of counsel either that he did not demonstrate trial counsel's actions were deficient or, if deficiency was proved, that he was not prejudiced thereby. For the reasons set forth above, we affirm the order of the district court denying Sierra's motion for postconviction relief.

AFFIRMED.