IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. HARTMAN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

THOMAS M. HARTMAN, APPELLANT.

Filed December 16, 2025.    No. A-25-077.

Appeal from the District Court for Douglas County: KATIE L. BENSON, Judge. Affirmed.

Justin A. Quinn for appellant.

Michael T. Hilgers, Attorney General, and Jacob M. Waggoner for appellee.

PIRTLE, WELCH, and FREEMAN, Judges.

FREEMAN, Judge.

## INTRODUCTION

Thomas M. Hartman appeals from the order of the Douglas County District Court denying his motion for postconviction relief, which claimed that his trial counsel was ineffective for failing to file a direct appeal despite his request to do so. For the reasons set forth below, we affirm.

## BACKGROUND

In December 2023, Hartman pled no contest to one count of terroristic threats, a Class IIIA felony. The court advised Hartman of his right to appeal at the sentencing hearing and found that Hartman entered his plea voluntarily, knowingly, and intelligently. Hartman waived the presentence investigation, and the court imposed a sentence of three years' imprisonment followed by one year of post-release supervision. No direct appeal was filed.

In July 2024, Hartman filed a pro se motion for postconviction relief. Hartman alleged that trial counsel was ineffective for failing to file a direct appeal despite Hartman's instructions.

- 1 -

Hartman claimed that counsel reasonably should have known that there was insufficient evidence to convict and asserted that he would not have entered into the plea agreement had the State not "threatened" him to accept. The district court subsequently scheduled an evidentiary hearing, which took place in November 2024.

At the evidentiary hearing, depositions from Hartman and trial counsel, Jessica Gilgor, were admitted into evidence. The district court also received three certified convictions for providing false information to law enforcement pertaining to Hartman.

Gilgor indicated in her deposition that she first met with Hartman at the end of September 2023. Gilgor described her standard practice after appointment was to contact the client, and at the first meeting, advise them of their rights in the pending case, including the right to a preliminary hearing, discovery, trial, cross-examination, and appeal. Gilgor stated that she informs clients of appellate rights early in representation and that her discussion of such rights varies depending on whether a case is resolved by a plea or trial. In plea cases, she would explain that an appeal may challenge the sentence or plea proceedings, while in trial cases, she would advise that appealable issues could include denials of motions.

Following sentencing or conviction, Gilgor explained that she typically informs clients that they have 30 days from sentencing to appeal. She will also ask the client if they have any questions or concerns, offer to provide copies of relevant documents, and arrange to send those materials to the client. However, Gilgor testified that she did not specifically recall discussing Hartman's right to appeal during the initial meeting or any time prior to the entry of his plea.

In November 2023, Gilgor motioned to withdraw as counsel, alleging a substantial breakdown in the lawyer-client relationship. Gilgor specifically pointed to excessive contact on behalf of Hartman in her deposition, including approximately 200 calls from jail over a 2-day period. The court denied Gilgor's request, reasoning that replacing her would only transfer the communication problems to another attorney.

Gilgor met with Hartman again sometime between December 1 and December 11, 2023, in the period between the conclusion of witness depositions and the initiation of the plea hearing. Gilgor recalled discussing the evidence revealed in those depositions and discussing the State's decision not to pursue habitual criminal enhancement, despite Hartman being habitual criminal eligible, in exchange for his plea as charged to terroristic threats. According to Gilgor, Hartman chose to plead no contest and requested to waive the presentence investigation, a request to which the State agreed.

Hartman's account of this same December 2023 meeting differed from Gilgor's testimony. Hartman testified that the prosecutor told him the State had sufficient evidence to convict but refused to show him the evidence. Hartman asserted that he requested that Gilgor provide the evidence and record of the jail phone calls in which the State had claimed to have sufficient evidence, but Gilgor failed to do so. He claimed that Gilgor presented him with a sheet of paper and told him the only option was to plead out and accept a 3-year sentence plus one year of post-release supervision, or else the prosecutor would file a habitual criminal enhancement. Hartman described the exchange as a coercive threat that dictated his decision not to go to trial. He further claimed that during that same December pre-plea meeting, he told Gilgor he wanted to pursue an appeal after the plea because he felt that he had no choice in the matter.

The court conducted the plea hearing on December 11, 2023. Hartman claimed that before the plea hearing began, he explicitly told Gilgor that he still wanted to appeal. Our record does not include the bill of exceptions from the plea hearing. However, the district court's plea and sentencing order reflected that Hartman voluntarily, knowingly, and intelligently entered a plea of no contest and that Hartman provided no reason why the sentence should not be passed against him. Hartman stated that he was taken from the courtroom immediately, so he had no chance to speak with Gilgor following the hearing. He conceded that he did not contact Gilgor again in the 30 days following sentencing.

Gilgor acknowledged in her testimony that she did not discuss appellate rights after Hartman's plea, explaining that a heavy caseload, lack of time, and approaching holidays caused her to deviate from her standard practice. Despite this failure, her billing records reflected no contact with Hartman after December 11, 2023, nor any other correspondence within the 30-day appeal period. Gilgor maintained that Hartman did not direct her to file an appeal at any point during her representation. Gilgor recalled that her next contact with Hartman occurred 7 months later, in July 2024. According to Hartman, Hartman called Gilgor in approximately June or July to check on the status of his appeal, but Gilgor told him she had never filed the appeal because she "forgot."

Gilgor testified that had Hartman directed her to file an appeal, she would have prepared and filed a notice of appeal with the court, along with a motion and proposed order to proceed in forma pauperis based on Hartman's indigent status. She explained that she would have also requested the transcript of all the pleadings and a bill of exceptions to initiate the appellate process and prepare an appellate brief for submission. Gilgor maintained that she did not take these steps because Hartman never instructed her to do so.

In January 2025, the district court denied Hartman's motion for postconviction relief. The court refused to adopt a rule requiring counsel to always consult with a client about the right to appeal. Instead, the court held that

> [c]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

The court first considered whether Hartman had established that a rational defendant would want to appeal. The court found that Hartman failed to establish a nonfrivolous issue to appeal, stating that the "favorable plea offer to not enhance the charge to include the habitual criminal aids in a finding there was not a meritorious reason to appeal."

The court also found that Hartman failed to demonstrate that he reasonably informed counsel of his desire to appeal. The court observed there was no evidence, other than Hartman's deposition testimony, that he directed trial counsel to file an appeal. It also relied on trial counsel's testimony that she never received any oral or written communication from Hartman in the 30 days following sentencing. Moreover, the court found Gilgor's testimony to be more credible, giving weight to three different criminal convictions identifying that Hartman had a history of lying to law enforcement. Ultimately, the court found that Gilgor had acted in a professionally reasonable manner, and Hartman was not entitled to postconviction relief in the form of a direct appeal.

Hartman appeals.

## ASSIGNMENTS OF ERROR

Hartman claims that the district court abused its discretion in failing to grant Hartman's motion for postconviction relief on the claim that trial counsel was ineffective for failing to file a direct appeal despite Hartman's request to do so.

## STANDARD OF REVIEW

Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact. *State v. Dalton*, 307 Neb. 465, 949 N.W.2d 752 (2020). When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. *Id*. With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision. *State v. Russell*, 308 Neb. 499, 954 N.W.2d 920 (2021).

In an evidentiary hearing on a motion for postconviction relief, the trial judge, as the trier of fact, resolves conflicts in the evidence and questions of fact. *Id*. Where competent evidence supports the district court's findings, the appellate court will not substitute its factual findings for those of the district court. *Id.*

## ANALYSIS

Hartman asserts that the district court abused its discretion in denying postconviction relief because his trial counsel failed to file a direct appeal despite his explicit request. He maintains that the district court erred by crediting Gilgor's testimony over his own, ignoring the coerced nature of his plea, and failing to recognize that he reasonably demonstrated his interest in appealing. Hartman also broadly claims that trial counsel was deficient, and but for those deficiencies, Hartman would have filed a direct appeal.

The State argues that Hartman's motion alleged only that counsel failed to file an appeal despite his explicit request, not that counsel failed to consult about a possible appeal. The State maintains that the district court properly focused on whether counsel followed Hartman's instructions, and any analysis of a failure to consult claim was unnecessary.

Before we address Hartman's claims, we must first establish the legal framework for our review. Postconviction relief is a very narrow category of relief, available only to remedy prejudicial constitutional violations that render the judgment void or voidable. *State v. Russell, supra*. The Nebraska Postconviction Act is intended to provide relief in those cases where a miscarriage of justice may have occurred; it is not intended to be a procedure to secure a routine review for any defendant dissatisfied with his or her sentence. *State v. Stricklin*, 310 Neb. 478, 967 N.W.2d 130 (2021). In a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable. *State v. Newman*, 300 Neb. 770, 916 N.W.2d 393 (2018).

To establish a right to postconviction relief based on a claim of ineffective assistance of counsel, the defendant has the burden, in accordance with *Strickland V. Washington, supra*, to show that (1) counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law and (2) that counsel's deficient performance prejudiced the defense in his or her case. See *State v. Dalton*, 307 Neb. 465, 949 N.W.2d 752 (2020). In order to obtain a new direct appeal as postconviction relief, the defendant must show, by a preponderance of the evidence, that counsel's ineffectiveness, rather than defendant's own actions, caused the loss of the right to appeal. See *State v. Russell*, 308 Neb. 499, 954 N.W.2d 920 (2021). In determining whether trial counsel's performance was deficient, there is a strong presumption that counsel acted reasonably. *State v. Jaeger*, 311 Neb. 69, 970 N.W.2d 751 (2022).

On the deficiency prong, a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable. *Id*. But the U.S. Supreme Court has rejected a bright-line rule that counsel is per se deficient by failing to automatically file a notice of appeal unless the defendant specifically instructs counsel not to. *Id*. In cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, the Court in *Roe v. Flores-Ortega*, 528 U.S. 470, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000), adopted a reasonableness inquiry for the deficiency prong. Under this standard, counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he or she was interested in appealing. See *id*.

Where the defendant has not conveyed his or her intent with respect to an appeal either way, it must first be determined whether trial counsel consulted with the defendant about the appeal before a determination can be made about deficient performance. *State v. Combs*, 308 Neb. 587, 955 N.W.2d 322 (2021). In this context, the term "consult" means advising the defendant about the advantages and disadvantages of taking an appeal and making a reasonable effort to discover the defendant's wishes. *Id*. If counsel has consulted with the defendant, then counsel performed deficiently only by failing to follow the defendant's "express instructions" regarding an appeal. *Id*.

On the prejudice prong of the ineffective assistance analysis seeking a new direct appeal, the U.S. Supreme Court has said that when counsel's constitutionally deficient performance deprives a defendant of an appeal that the defendant otherwise would have taken, such a denial of a critical stage of the judicial proceedings is one of the extreme failures of performance that demands a presumption of prejudice. *State v. Russell, supra*. We have similarly articulated that after a trial, conviction, and sentencing, if counsel deficiently fails to file or perfect an appeal after being so directed by the criminal defendant, prejudice will be presumed and counsel will be deemed ineffective, thus entitling the defendant to postconviction relief. Id. But the U.S. Supreme Court has explained that it is a "critical requirement that counsel's deficient performance must actually cause the forfeiture of the defendant's appeal." *Roe v. Flores-Ortega*, 528 U.S. at 484.

Having established the review standard, we now consider Hartman's claims against the backdrop of the district court's decision. In an evidentiary hearing for postconviction relief, the postconviction trial judge, as the trier of fact, resolves conflicts in the evidence and questions of fact, including witness credibility and the weight to be given a witness' testimony. *State v. Sierra*,

31 Neb. App. 852, 990 N.W.2d 49 (2023). Where competent evidence supports the district court's findings, the appellate court will not substitute its factual findings for those of the district court. *State v. Russell*, 308 Neb. 499, 954 N.W.2d 920 (2021).

As it pertains to deficiency, the district court found no evidence aside from Hartman's deposition that he instructed Gilgor to file an appeal. The court credited Gilgor's testimony that she never received any oral or written direction within the 30-day appeal period and that had Hartman directed her to, she would have prepared and filed a notice of appeal. Gilgor's call logs supported her testimony, showing no post sentencing communication from Hartman. The court further relied on three certified records showing Hartman's prior convictions for providing false information. This credibility determination is supported by competent evidence, and we defer to the district court's finding that no appeal was requested. Thus, under controlling law, absent an express instruction to appeal, counsel's performance is not deficient.

As Hartman failed to show a clear instruction to appeal, but Gilgor also conceded that she failed to inform Hartman of his right to appeal, the court properly considered whether counsel had a duty to consult regarding an appeal. Under the reasonableness inquiry, counsel must consult when there is reason to believe that a rational defendant would want to appeal, or that this particular defendant reasonably demonstrated an interest in appealing. The district court dedicated a large portion of its analysis to this inquiry and found that neither applied. We find that the record supports that conclusion.

Hartman received a favorable plea agreement. He pled no contest to terroristic threats, a Class IIIA felony, with a maximum penalty of 3 years' imprisonment. In exchange, the State declined to pursue habitual criminal enhancement, despite Hartman's eligibility, which may have subjected him to a mandatory minimum of 10 years' imprisonment. Furthermore, Hartman waived the presentence investigation to which the State did not object, and the district court sentenced Hartman to 3 years' confinement with the Nebraska Department of Correctional Services (with credit for 83 days already spent in custody) and 1 year's post-release supervision. Those circumstances make it unlikely that a rational defendant would have wanted to appeal. In other words, Hartman does not appear to have a meritorious basis to appeal.

Hartman's claim that his plea was coerced by the prosecutor's threat to file a habitual criminal enhancement does not alter that conclusion. The district court expressly found Hartman entered his plea voluntarily, knowingly, and intelligently. Our record does not contain the bill of exceptions from the plea hearing, so it is reasonable for us to presume that the evidence supported the district court's finding. See *William P. v. Jamie P.*, 313 Neb. 378, 984 N.W.2d 285 (2023) (absent record of evidence considered by court, it is presumed on appeal evidence supports trial court's orders and judgments). As Hartman was likely provided an opportunity to disclose any alleged coercion at the time of his plea and failed to do so, his later claim to the contrary is inconsistent with the record before us. Even more, an unsupported allegation of coercion, not raised at the time of the plea, does not create an automatic duty to appeal, especially where Hartman failed to instruct counsel to do so.

Moreover, the record shows that Hartman failed to reasonably demonstrate a desire to appeal to counsel. Hartman's only proof was his own deposition testimony claiming that he directed counsel to appeal twice: first during a December pre-plea meeting and again immediately prior to the entry of his plea on December 11, 2023. However, the court already determined that

Gilgor's testimony and supporting evidence outweighed that offered by Hartman. Although this court would point out that Hartman's 200 calls within 2 days might have put Gilgor on notice that Hartman would likely attempt to appeal, his following silence and acceptance of a favorable plea agreement support the court's conclusion that he did not express an intent to appeal. On that basis, we find no error in the district court's finding that Gilgor was not deficient for failing to file an appeal.

## CONCLUSION

Having reviewed the record and given deference to the district court's findings of fact, we find no clear error in the court's findings. Gilgor was not instructed to file an appeal, her performance was not deficient, and Hartman suffered no resulting prejudice. The order of the district court dismissing Hartman's motion for postconviction relief is affirmed.

AFFIRMED.